**BREARD v. CITY OF ALEXANDRIA, LA.**

Supreme Court of United States.

No. 399.   Decided June 4, 1951.

212

E. Russell Shockley, Philadelphia, Pa., for appellant.
Frank H. Peterman, Alexandria, La., for appellee.

MR. JUSTICE REED delivered the opinion of the Court.

## OPINION

The appellant here, Jack H. Breard, a regional representative of Keystone Readers Service, Inc., a Pennsylvania corporation, was arrested while going from door to door in the City of Alexandria, Louisiana, soliciting subscriptions for nationally known magazines. The arrest was solely on the ground that he had violated an ordinance because he had not obtained the prior consent of the owners of the residences solicited. Breard, a resident of Texas, was in charge of a crew of solicitors who go from house to house in the various cities and towns in the area under Breard's management and solicit subscriptions for nationally known magazines and periodicals including among others the Saturday Evening Post, Ladies Home Journal, Country Gentleman, Holiday, Newsweek, American Home, Cosmopolitan, Esquire, Pic, Parents, Today's Woman and True. These solicitors spend only a few days in each city depending upon its size. Keystone sends a card from its home office to the new subscribers acknowledging receipt of the subscription and thereafter the periodical is forwarded to the subscriber by the publisher in interstate commerce through the mails.

The ordinance under which the arrest was made, so far as is here pertinent, reads as follows:

"Section 1. Be it ordained by the council of the city of Alexandria, Louisiana, in legal session convened that the practice of going in and upon private residences in the City of Alexandria, Louisiana, by solicitors, peddlers, hawkers, itinerant merchants or transient vendors of merchandise not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences for the purpose of soliciting orders for the sale of goods, wares and merchandise and/or disposing of and/or peddling or hawking the same is declared to be a nuisance and punishable as such nuisance as a misdemeanor."

214

It, or one of similar import, has been on the statute books of Alexandria for many years. It is stipulated that:

"Such ordinance was enacted by the City Council, among other - reasons, because some householders complained to those in authority that in some instances, for one reason or another, solicitors were undesirable or discourteous, and some householders complained that, whether a solicitor was courteous or not, they did not desire any uninvited intrusion into the privacy of their home."

The protective purposes of the ordinance were underscored by the Supreme Court of Louisiana in its opinion. 217 La. 820, 47 So. 2d 553, at page 555.

At appellant's trial for violation of the ordinance there was a motion to quash on the ground that the ordinance violates the Due Process Clause of the Fourteenth Amendment to the Federal Constitution; that it violates the Federal Commerce Clause, article 1, section 8, clause 3; and that it violates the guarantees of the First Amendment of freedom of speech and of the press, made applicable to the states by the Fourteenth Amendment to the Constitution of the United States. Appellant's motion to quash was overruled by the trial court and he was found guilty and sentenced to pay a $25 fine or serve 30 days in jail. The Supreme Court of Louisiana affirmed appellant's conviction and expressly rejected the federal constitutional objections. 217 La. 820, 47 So. 2d 553. The case is here on appeal, 28 U. S. C. Section 1257, Jamison v. Texas, 318 U. S. 413, 63 S. Ct. 669, 87 L. Ed. 869.

All declare for liberty and proceed to disagree among themselves as to its true meaning. There is equal unanimity that opportunists, for private gain, cannot be permitted to arm themselves with an acceptable principle, such as that of a right to work, a privilege to engage in interstate commerce, or a free press, and proceed to use it as an iron standard to smooth their path by crushing the living rights of others to privacy and repose. This case calls for an adjustment of constitutional rights in the light of the particular living conditions of the time and place. Everyone cannot have his own way and each must yield something to the reasonable satisfaction of the needs of all.

It is true that the knocker on the front door is treated as an invitation or license to attempt an entry justifying ingress to the home by solicitors, hawkers and peddlers for all kinds of salable articles.[1] When such visitors are barred from premises by notice or order, however, subsequent trespasses

---

1. Restatement of Torts, §167; Cooley, Torts (4th ed.) §248.

have been punished.[2]  Door-to-door canvassing has flourished increasingly in recent years with the ready market furnished by the rapid concentration of housing.  The infrequent and still welcome solicitor to the rural home became to some a recurring nuisance in towns when the visits were multiplied.[3]  Unwanted knocks on the door by day or night are a nuisance or worse to peace and quiet.  The local retail merchant, too, has not been unmindful of the effective competition furnished by house-to-house selling in many lines.  As a matter of business fairness, it may be thought not really sporting to corner the quarry in his home and through his open door put pressure on the prospect to purchase.  As the exigencies of trade are not ordinarily expected to have a higher rating constitutionally than the tranquillity of the fireside, responsible municipal officers have sought a way to curb the annoyances while preserving complete freedom for desirable visitors to the homes.  The idea of barring classified salesmen from homes by means of notices posted by individual householders was rejected early as less practical than an ordinance regulating solicitors.[4]

The Town of Green River, Wyoming, undertook in 1931 to remedy by ordinance the irritating incidents of house-to-house canvassing for sales.  The substance of that ordinance, so far as here material is the same as that of Alexandria,

2. Hall v. Com. of Virginia, 188 Va. 72, 49 S. E. 2d 369, appeal dismissed 335 U. S. 875, 69 S. Ct. 240, 93 L. Ed. 418; statutes collected Martin v. City of Struthers, 319 U. S. 141, 147, note 10, 63 S. Ct. 862, 865, 87 L. Ed. 1313.

3. "We must assume that the practice existed in the town as the first section states, and that it had become annoying and disturbing and objectionable to at least some of the citizens.  We think like practices have become so general and common as to be of judicial knowledge, and that the frequent ringing of doorbells of private residences by itinerant vendors and solicitors is in fact a nuisance to the occupants of homes.  It is not appellee and its solicitors and their methods alone that must be considered in determining the reasonableness of the ordinance, but many others as well who seek in the same way to dispose of their wares.  One follows another until the ringing doorbells disturb the quietude of the home and become a constant annoyance."  Town of Green River v. Fuller Brush Co.. 10 Cir., 65 F. 2d 112, 114, 88 A. L. R. 177.

4. Town of Green River v. Bunger, 50 Wyo. 52, 70, 58 P. 2d 456, 462; cf. Real Silk Hosiery Mills v. City of Richmond, D. C., 298 F. 126.

Louisiana.[5] The Green River ordinance was sustained by the Circuit Court of Appeals of the Tenth Circuit in 1933 against an attack by a nonresident corporation, a solicitor of orders, through a bill for an injunction to prohibit its enforcement, on the federal constitutional grounds of interference with interstate commerce, deprivation of property without due process of law, and denial of the equal protection of the laws. Town of Green River v. Fuller Brush Co., 10 Cir., 65 F. 2d 112. No review of that decision was sought. An employee of the Brush Company challenged the same ordinance again in the courts of Wyoming in 1936 on a prosecution by the town for the misdemeanor of violating its terms. On this attack certain purely state grounds were relied upon, which we need not notice, and the charges of violation of the Federal Constitution were repeated. The ordinance was held valid by the Supreme Court of Wyoming. Town of Green River v. Bunger, 50 Wyo. 52, 58 P. 2d 456.[6]

---

5. The ordinance now under consideration, § 3, does not apply to "the sale, or soliciting of orders for the sale, of milk, dairy products, vegetables, poultry, eggs and other farm and garden produce * * *." Appellant makes no point against the present ordinance on the ground of invalid classification. Cf. Tigner v. Texas, 310 U. S. 141, 60 S. Ct. 879, 84 L. Ed. 1124; Williams v. Arkansas, 217 U. S. 79, 90, 30 S. Ct. 493, 495, 54 L. Ed. 673.

6. The validity of Green River ordinances has also been considered in a number of state courts. Five states—Colorado, Louisiana (in cases previous to the instant one), New Mexico, New York, and Wyoming—have upheld the ordinance, against objections that it was beyond the scope of the police power, deprived vendors of property rights without due process of law, deprived them of the equal protection of the laws and infringed upon the Commerce Clause, and the First and Fourteenth Amendments. McCormick v. City of Montrose, 105 Colo. 493, 99 P. 2d 969; Shreveport v. Cunningham, 190 La. 481, 482, 182 So. 649; City of Alexandria v. Jones, 216 La. 923, 45 So. 2d 79; Green v. Gallup, 46 N. M. 71, 120 P. 2d 619; People v. Bohnke, 287 N. Y. 154, 38 N. E. 2d 478; Green River v. Bunger, 50 Wyo. 52, 58 P. 2d 456.

Eleven states, on the other hand, have held such ordinances invalid. All of these states acted in part at least on nonfederal grounds, and the only federal constitutional argument, which was considered by three states, was that based on the Due Process Clause. No state court, in voiding the ordinance, has reached the Commerce Clause or the First Amendment issues urged here. The principal grounds relied on have been that the prohibited conduct amounted at most only to a private nuisance and not a

Due Process.—On appeal to this Court, appellant urged particularly the unconstitutionality under the Fourteenth Amendment Due Process Clause of such unreasonable restraints as the Green River ordinance placed on "the right to engage in one of the common occupations of life," citing inter alia, New State Ice Co. v. Liebmann, 285 U. S. 262, 278, 52 S. Ct., 371, 374, 76 L. Ed. 747, and Adams v. Tanner, 244 U. S. 590, 37 S. Ct., 662, 61 L. Ed. 1336.  He also relied upon

---

public one; that there was no showing of injury to public health or safety by the prohibited conduct; that there was a vested right in a lawful occupation, so that it was subject only to regulation but not to prohibition; and that the ordinance was beyond the delegatd powers of the municipality.  Prior v. White, 132 Fla. 1, 180 So. 347, 116 A. L. R. 1176 (not more than a private nuisance) ; Clay v. Matthews, 185 Ga. 279, 194 S. E. 172 (affirming without opinion by an evenly divided court) ; DeBerry v. LaGrange, 62 Ga. App. 74, 8 S. E. 2d 146 (not a nuisance; invades an inalienable right to the occupation of soliciting) ; Osceola v. Blair, 231 Iowa 770, 2 N. W. 2d 83 (not a nuisance, deprives persons of a property right in their occupation) ; City of Mt. Sterling v. Donaldson Baking Co., 287 Ky. 781, 155 S. W. 2d 237 (not a public nuisance, beyond the scope of the municipal police power) ; Jewel Tea Co. v. Bel Air, 172 Md. 536, 192 A. 417 (not a nuisance, not within delegated powers of municipality) ; Jewel Tea Co. v. Geneva, 137 Neb. 768, 291 N. W. 664 (not a public nuisance, arbitrary, violates Due Process Clause, citing Jay Burns Baking Co. v. Bryan, 264 U. S. 504, 44 S. Ct., 412, 68 L. Ed. 813) ; N. J. Good Humor, Inc., v. Board of Commissioners, 124 N. J. L. 162, 11 A. 2d 133 (not a valid police regulation, beyond powers of municipality) ; McAlester v. Grand Union Tea Co., 186 Okl. 487, 98 P. 2d 924 (only a private nuisance) ; City of Orangeburg v. Farmer, 181 S. C. 143, 186 S. E. 783 (unreasonable, prohibits a lawful occupation, in violation of state and federal due process, enacted with improper motive) ; Ex parte Faulkner, 143 Tex. Cr. R. 272, 158 S. W. 2d 525 (beyond the powers of the municipality) ; White v. Town of Culpeper, 172 Va. 630, 1 S. E. 2d 269 (not a public nuisance).

The ordinances in the Bel Air and Culpeper cases contained discriminatory provisions not involved in the instant case.  It should be noted also that while New York upheld the ordinance in Bohnke, supra, as applied to distribution of religious tracts, that case was decided before this Court's decision in Martin v. City of Struthers, 319 U. S. 141, 63 S. Ct., 862, 87 L. Ed. 1313. Enforcement of Green River ordinances has subsequently been enjoined as against members of the Jehovah's Witnesses sect, in Donley v. Colorado Springs, D. C., 40 F. Supp. 15, and Zimmerman v. Village of London, D. C. Ohio, 38 F. Supp. 582.

the alleged prohibition of interstate commerce under the guise of a police regulation.[7]

Here this Court dismissed for want of a substantial federal question. Bunger v. Green River, 300 U. S. 638, 57 S. Ct., 510, 81 L. Ed. 854. For an answer to the argument that the ordinance denied due process because of its unreasonable restraint on the right to engage in a legitimate occupation, this Court cited three cases: Gundling v. Chicago, 177 U. S. 183, 20 S. Ct., 633, 44 L. Ed. 725;[8] Western Turf Association v. Greenberg, 204 U. S. 359, 27 S. Ct., 384, 51 L. Ed. 520;[9] and

7. He cited: Real Silk Hosiery Mills v. Portland, 268 U. S. 325, 45 S. Ct. 525, 69 L. Ed. 982; DiSanto v. Pennsylvania, 273 U. S. 34, 47 S. Ct. 267, 71 L. Ed. 524; International Textbook Co. v. Pigg, 217 U. S. 91, 30 S. Ct. 481, 54 L. Ed. 678; Rogers v. Arkansas, 227 U. S. 401, 33 S. Ct. 298, 57 L. Ed. 569; Robbins v. Shelby Taxing District, 120 U. S. 489, 7 S. Ct. 592, 30 L. Ed. 694; Baldwin v. G. A. F. Seelig, Inc., 294 U. S. 511, 55 S. Ct. 497, 79 L. Ed. 1032; Stewart v. People of State of Michigan, 232 U. S. 665, 34 S. Ct. 476, 58 L. Ed. 786.

8. An ordinance forbidding the sale of cigarettes without a license was upheld.

"Regulations respecting the pursuit of a lawful trade or business are of very frequent occurrence in the various cities of the country, and what such regulations shall be and to what particular trade, business, or occupation they shall apply are questions for the state to determine, and their determination comes within the proper exercise of the police power by the state, and unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law, they do not extend beyond the power of the state to pass, and they form no subject for Federal interference." 177 U. S. at page 188, 20 S. Ct. at page 635.

9. A statute making it unlawful to refuse a purchaser of a ticket admission to a place of public entertainment except in certain circumstances relating to drunkenness and vice, was upheld.

"Does the statute deprive the defendant of any property right without due process of law? We answer this question in the negative. Decisions of this court, familiar to all, and which need not be cited, recognize the possession, by each state, of powers never surrendered to the general government; which powers the state, except as restrained by its own Constitution or the Constitution of the United States, may exert not only for the public health, the public morals, and the public safety, but

Williams v. Arkansas, 217 U. S. 79, 30 S. Ct., 493, 54 L. Ed. 673.[10]

The opinions of this Court since this Green River case have not given any ground to argue that the police power of a state over soliciting has constitutional infirmities under the due process principle embodied in the concept of freedom to carry on an inoffensive trade or business. Decisions such as Liebmann and Tanner, supra, invalidating legislative action, are hardly in point here. The former required a certificate of convenience and necessity to manufacture ice, and the latter prohibited employment agencies from receiving remuneration for their services. The Green River ordinance can be characterized as prohibitory of appellant's legitimate business of obtaining subscriptions to periodicals only in

---

for the general or common good, for the well-being comfort, and good order of the people." 204 U. S. at page 363, 27 S. Ct. at page 386.

"Such a regulation, in itself just, is likewise promotive of peace and good order among those who attend places of public entertainment or amusement." 204 U. S. at page 364, 27 S. Ct. at page 386.

10. The following sections of a statute of Arkansas, Acts 1907, Act No. 236, were upheld:

" 'Sec. 1. That it shall be unlawful for any person or persons, except as hereinafter provided in § 2 of this act, to drum or solicit business or patronage for any hotel, lodging house, eating house, bath house, physician, masseur, surgeon, or other medical practitioner, on the trains, cars, depots of any railroad or common carrier operating or running within the state of Arkansas.
" '* * *

" 'Sec. 2. That it shall be unlawful for any railroad or common carrier operating a line within the state of Arkansas knowingly to permit its trains, cars, or depots within the state to be used by any person or persons for drumming or soliciting business or patronage for any hotel, lodging house, eating house, bath house, physician, masseur, surgeon, or other medical practitioner, or drumming or soliciting for any business or profession whatsoever; * * *'." 217 U. S. 86, 30 S. Ct. 493.

This Court said:

"Drummers who swarm through the trains soliciting for physicians, bath houses, hotels, etc., make existence a burden to those who are subjected to their repeated solicitations. It is true that the traveler may turn a deaf ear to these importunities, but this does not render it any the less unpleasant and annoying. The drummer may keep within the law against disorderly conduct, and still render himself a source of annoyance to travelers by his much beseeching to be allowed to lead the way to a doctor or a hotel." 217 U. S. 89, 30 S. Ct. 495.

the limited sense of forbidding solicitation of subscriptions by house-to-house canvass without invitation. All regulatory legislation is prohibitory in that sense. The usual methods of solicitation—radio, periodicals, mail, local agencies are open.[11] Furthermore, neither case is in as strong a position today as it was when Bunger appealed. See Olsen v. Nebraska, 313 U. S. 236, 243, et seq., 61 S. Ct. 862, 863, 85 L. Ed. 1305, and Lincoln Federal Labor Union v. Northwestern Iron & Metal Co., 335 U. S. 525, 535, 69 S. Ct. 251, 256, 93 L. Ed. 212.

The Constitution's protection of property rights does not make a state or a city impotent to guard its citizens against the annoyances of life because the regulation may restrict the manner of doing a legitimate business.[12] The question of a man's right to carry on with propriety a standard method of selling is presented here in its most appealing form—an assertion by a door-to-door solicitor that the Due Process Clause of the Fourteenth Amendment does not permit a state or its subdivisions to deprive a specialist in door-to-door selling of his means of livelihood. But putting aside the argument that after all it is the commerce, i. e., sales of periodicals, and not the methods, that is petitioner's business, we think that even a legitimate occupation may be restricted or prohibited in the public interest. See the dissent in New State Ice Co. v. Liebmann, 285 U. S. 262, 280, 303, 52 S. Ct

11. But cf. Jensen, Burdening Interstate Direct Selling, 12 Rocky Mtn. L. Rev. 257, 275: "To disclaim this economic effect of upholding the ordinance and to suggest other methods of merchandising to direct-selling businesses short of local retailing, as was done by the Tenth Circuit Court of Appeals [65 F. 2d 112], shows a woeful lack of knowledge of the actual problems of direct-to-consumer merchandising."

12. Nebbia v. People of State of New York, 291 U. S. 502, 523, 54 S. Ct. 505, 510, 78 L. Ed. 940:

"Under our form of government the use of property and the making of contracts are normally matters of private and not of public concern. The general rule is that both shall be free of governmental interference. But neither property rights nor contract rights are absolute; for government cannot exist if the citizen may at will use his property to the detriment of his fellows, or exercise his freedom of contract to work them harm. Equally fundamental with the private right is that of the public to regulate it in the common interest." Railway Express Co. v. New York, 336 U. S. 106, 69 S. Ct. 463, 93 L. Ed. 533; Daniel, Attorney General v. Family Security Life Ins. Co., 336 U. S. 220, 69 S. Ct. 550, 93 L. Ed. 632.

371, 375, 383, 76 L. Ed. 747. The problem is legislative where there are reasonable bases for legislative action.[13] We hold that this ordinance is not invalid under the Due Process Clause of the Fourteenth Amendment.

Commerce Clause.—Nor did this Court in Bunger consider the Green River ordinance invalid under the Commerce Clause as an unreasonable burden upon or an interference with interstate commerce.[14] As against the cases cited in Bunger's behalf, this Court relied upon Asbell v. Kansas, 209 U. S. 251, 254, 255, 28 S. Ct. 485, 486, 52 L. Ed. 778 (allowing Kansas to have its own inspection for cattle imported into the state, except for immediate slaughter); Savage v. Jones, 225 U. S. 501, 525, 32 S. Ct. 715, 722, 56 L. Ed. 1182 (allowing a state to regulate the sale and require a formula for stock feeds); Hartford Accident & Indemnity Co. v. People of State of Illinois, 298 U. S. 155, 158, 56 S. Ct. 685, 686, 80 L. Ed. 1099 (upholding an Illinois statute requiring commission merchants to keep record of out-of-state consignments and obtain a license and give a bond).[15]

Appellant does not, of course, argue that the Commerce Clause forbids all local regulation of solicitation for interstate business.

"Under our constitutional system, there necessarily remains to the states, until Congress acts, a wide range for the permissible exercise of power appropriate to their territorial jurisdiction although interstate commerce may be affected. * * * States are thus enabled to deal with local

13. State of Arizona v. California, 283 U. S. 423, 454-455, 51 S. Ct. 522, 525, 526, 75 L. Ed. 1154; Henneford v. Silas Mason Co., 300 U. S. 577, 586, 57 S. Ct. 524, 528, 81 L. Ed. 814.

14. Constitution, Art. I, § 8, cl. 3.

15. The cases cited for Bunger may be easily distinguished. The cases of the Shelby County Taxing District, Rogers v. Arkansas, 227 U. S. 401, 33 S. Ct. 298, 57 L. Ed. 569, and Stewart v. Michigan, 232 U. S. 665, 34 S. Ct. 476, 58 L. Ed. 786, relate to taxes upon or licenses to do an interstate business. The same is true of Real Silk Hosiery Mills v. Portland, 268 U. S. 325, 45 S. Ct. 525, 526, 69 L. Ed. 982. There is, however, in this latter case a statement that should be noticed: "Nor can we accept the theory that an expressed purpose to prevent possible frauds is enough to justify legislation which really interferes with the free flow of legitimate interstate commerce. See Shafer v. Farmers' Grain Co., 268 U. S. 189, 45 S. Ct. 481, 69 L. Ed. 909." 268 U. S. at page 336, 45 S. Ct. at page 526. That should be read as a comment on an ordinance requiring a license and a bond to carry on interstate business. Cf. Parker v. Brown, 317

exigencies and to exert in the absence of conflict with federal legislation an essential protective power."[16]

Such state power has long been recognized.[17] Appellant argues that the ordinance violates the Commerce Clause "because the practical operation of the ordinance, as applied to appellant and others similarly situated, imposes an undue and discriminatory burden upon interstate commerce and in effect is tantamount to a .prohibition of such commerce." The attempt to secure the householder's consent is said to be too costly and the results negligible. The extent of this

---

U. S. 341, 361, 63 S. Ct. 307, 318, 87 L. Ed. 315.

The statute held invalid 'in the International Textbook case (International Textbook Co. v. Pigg), 217 U. S. 91, 30 S. Ct. 481, 54 L. Ed. 678, was one construed to require a license to transact interstate business. Baldwin v. G. A. F. Seelig, Inc., 294 U. S. 511, 55 S. Ct. 497, 79 L. Ed.' 1032, held invalid a state law prohibiting the sale of milk imported from another state unless the price paid in the selling state reached the minimum price requirement of sellers in the regulating state. The DiSanto case (DiSanto v. Pennsylvania), 273 U. S. 34, 47 S. Ct. 267, 71 L. Ed. 524, holding invalid a state law requiring steamship agents to procure a license as a direct burden on commerce, can' no longer be cited as authority for such a ruling. California v. Thompson, 313 U. S. 109, 115, 61 S. Ct. 930, 933, 85 L. Ed. 1219. None of these cases reach the problem here under consideration of local regulation of solicitor's conduct.

,16. Kelly v. Washington, 302 U. S. 1, 9-10, 58 S. Ct. 87, 92, 82 L. Ed. 3.

17. Cooley v. Board of Wardens, 12 How. 299, 13 L. Ed. 996; Emert v. Missouri, 156 U. S. 296, 15 S. Ct. 367, 39 L. Ed. 430; Austin v. Tennessee, 179 U. S. 343, 21 S. Ct. 132, 45 L. Ed. 224; The Minnesota Rate Cases (Simpson v. Shepard), 230 U. S. 352, 402, 408, 33 S. Ct. 729, 741, 743, 57 L. Ed. 1511; South Carolina State Highway Dept. v. Barnwell Bros., 303 U. S. 177, 187, 625, 58 S. Ct. 510, 514, 82 L. Ed. 734; California v. Thompson, 313 U. S. 109, 61 S. Ct. 930; Parker v. Brown, 317 U. S. 341, 359, 362, 63 S. Ct. 307, 317, 319, 87 L. Ed. 315; Toomer v. Witsell 334 U. S. 385, 394, 68 S. Ct. 1156, 1161, 92 L. Ed. 1460; Panhandle Eastern Pipe Line Co. v. Michigan Pub. Serv. Comm., 71 S. Ct. 777.

"As has been so often stated but nevertheless seems to require constant repetition, not all burdens upon commerce, but only undue or discriminatory ones, are' forbidden. For, though 'interstate business must pay its way,' a state consistently with the commerce clause cannot put a barrier around its borders to bar out trade from other states and thus bring to naught the great

interstate business, as stipulated, is large.[18] Appellant asserts that Green River v. Bunger, supra, is inapplicable to the commerce issue, although the point was made and met, because the effect of the ordinance at that date, 1936, upon commerce was "incidental"[19] and because it was decided "before the widespread enactment of Green River Ordinances and before their actual and cumulative effect upon interstate commerce could possibly be forecast." It is urged that our

constitutional purpose of the fathers in giving to Congress the power 'To regulate Commerce with foreign Nations, and among the several States * * *'. Nor may the prohibition be accomplished in the guise of taxation which produces the excluding or discriminatory effect." Nippert v. Richmond, 327 U. S. 416, 425-426, 66 S. Ct. 586, 590, 90 L. Ed. 760.

And cf. Nelson v. Sears, Roebuck & Co., 312 U. S. 359, 61 S. Ct. 586, 85 L. Ed. 888, where the maintenance of retail stores within a state by a corporation engaged in direct mail selling was held to permit the state to tax such sales to its residents even though none of the corporation's agents within the state had any connection with the sales.

18. "The solicitation of subscriptions in the field regularly accounts for from 50% to 60% of the total annual subscription circulation of nationally-distributed magazines which submit verified circulation reports to the Audit Bureau of Circulations. * * * During the period from 1925 to date, the average circulation per issue of such magazines attributable to field subscription solicitation, * * * has amounted to more than 30% of the total average annual circulation per issue * * *." The total subscription value obtained by Keystone Readers Service, appellant's employer, in 1948 was $5,319,423.40. There is a national association of magazine publishers, a trade organization whose members publish some 400 nationally distributed magazines with a combined circulation of 140 million copies. This association sponsors and maintains a central registry plan to which agencies like Keystone, soliciting subscriptions, belong.

19. "Incidental" as a test has not continued as a useful manner for determining the validity of local regulation of matters affecting interstate commerce.

"Such regulations by the state are to be sustained, not because they are 'indirect' rather than 'direct,' * * * not because they control interstate activities in such a manner as only to affect the commerce rather than to command its operations. But they are to be upheld because upon a consideration of all the relevant facts and circumstances it appears that the matter is one which may appropriately be regulated in the interest of the safety, health and well-being of local communities, and which, because of its

224

recent cases of Hood & Sons v. DuMond, 336 U. S. 525, 69 S. Ct. 657, 93 L. Ed. 865, and Dean Milk Co. v. City of Madison, 340 U. S. 349, 71 S. Ct. 295, demonstrate that this Court will not permit local interests to protect themselves against out-of-state competition by curtailing interstate business.[20]

It was partly because the regulation in Dean Milk Co. discriminated against interstate commerce that it was struck down.

"In thus erecting an economic barrier protecting a major local industry against competition from without the State, Madison plainly discriminates against interstate commerce. This it cannot do, even in the exercise of its unquestioned power to protect the health and safety of its people, if reasonable nondiscriminatory alternatives, adequate to conserve legitimate local interests are available." 340 U. S. at page 354, 71 S. Ct. at page 298.

Nor does the clause as to alternatives apply to the Alexandria ordinance. Interstate commerce itself knocks on the local door. It is only by regulating that knock that the interests of the home may be protected by public as distinct from private action.[21] Likewise in Hood & Sons v. DuMond it was the discrimination against out-of-state dealers that invalidated the order refusing a license to buy milk to an out-of-state distributor.[22] Where no discrimination existed,

---

local character and the practical difficulties involved, may never be adequately dealt with by Congress." Parker v. Brown, 317 U. S. 341, 362-363, 63 S. Ct. 307, 319, 87 L. Ed. 315.

20. So far as this argument seeks to blame the passage of the ordinance on local retailers, we disregard it. Such arguments should be presented to legislators, not to courts. Arizona v. California, 283 U. S. 423, 455, 51 S. Ct. 522, 75 L. Ed. 1154. See 71 S. Ct. 927, supra.

21. 340 U. S. at pages 354-355, 71 S. Ct. at page 298:

"If the City of Madison prefers to rely upon its own officials for inspection of distant milk sources, such inspection is readily open to it without hardship for it could charge the actual and reasonable cost of such inspection to the importing producers and processors."

22. 336 U. S. 525, 531-532, 533, 69 S. Ct. 657, 662, 93 L. Ed. 865:

"It [the opinion in Baldwin v. G. A. F. Seelig, Inc., 294 U. S. 511, 55 S. Ct. 497, 79 L. Ed. 1032] recognized, as do we, broad power in the State to protect its inhabitants against perils to health or safety, fraudulent traders and highway hazards, even by use of measures which bear adversely upon interstate com-

in a somewhat similar situation, we upheld the state regula-
tion as a permissible burden on commerce.[23] See in accord,
Panhandle Eastern Pipe Line Co. v. Michigan Pub. Serv.
Comm., supra, 71 S. Ct. 781.

We recognize the importance to publishers of our many
periodicals of the house-to-house method of selling by solicita-
tion. As a matter of constitutional law, however, they in
their business operations are in no different position so far
as the Commerce Clause is concerned than the sellers of
other wares.[24] Appellant, as their representative or in his
own right as a door-to-door canvasser, is no more free to
violate local regulations to protect privacy than are other
solicitors. As we said above, the usual methods of seeking
business are left open by the ordinance. That such methods
do not produce as much business as house-to-house canvass-
ing is, constitutionally, immaterial and a matter for adjust-
ment at the local level in the absence of federal legislation.
Cf. Prudential Ins. Co. v. Benjamin, 328 U. S. 408, 66 S. Ct.
1142, 90 L. Ed. 1342. Taxation that threatens interstate com-
merce with prohibition or discrimination is bad. Nippert
v. Richmond, 327 U. S. 416, 434, 66 S. Ct. 586, 594, 90 L. Ed.
760, but regulation that leaves out-of-state sellers on the
same basis as local sellers cannot be invalid for that reason.

While taxation and licensing of hawking or peddling, defined
as selling and delivering in the state, has long been thought
to show no violation of the Commerce Clause, solicitation of
orders with subsequent interstate shipment has been immune

---

merce. But it laid repeated emphasis upon the principle that the
State may not promote its own economic advantages by curtail-
ment or burdening of interstate commerce.

         *           *           *           *

"This distinction between the power of the State to shelter
its people from menaces to their health or safety and from fraud,
even when those dangers emanate from interstate commerce, and
its lack of power to retard, burden or constrict the flow of such
commerce for their economic advantage, is one deeply rooted in
both our history and our law."

23. Milk Control Board v. Eisenberg Farm Products, 306 U. S.
346, 59 S. Ct. 528, 83 L. Ed. 752.

24. Giragi v. Moore, 301 U. S. 670, 57 S. Ct. 946, 81 L. Ed.
1334; Id., 48 Ariz. 33, 58 P. 2d 1249, 110 A. L. R. 314; Id., 49
Ariz. 74, 64 P. 2d. 819, 110 A. L. R. 320; Associated Press v.
National Labor Relations Board, 301 U. S. 103, 132-133, 57 S.
Ct. 650, 655, 656, 81 L. Ed. 953; Associated Press v. United
States, 326, U. S. 1, 7, 65 S. Ct. 1416, 1418, 89 L. Ed. 2013.

from such an exaction.[25] These decision have been explained by this Court as embodying a protection of commerce against discrimination made most apparent by fixed-sum licenses regardless of sales.[26] Where the legislation is not an added financial burden upon sales in commerce or an exaction for the privilege of doing interstate commerce but a regulation of local matters, different considerations apply.

We think Alexandria's ordinance falls in the classification of regulation. The economic effects on interstate commerce in door-to-door soliciting cannot be gainsaid. To solicitors so engaged, ordinances such as this compel the development of a new technique of approach to prospects. Their local retail competitors gain advantages from the location of their stores and investments in their stock but the solicitor retains his flexibility of movement and freedom from heavy investment.

The general use of the Green River type ordinance shows its adaptation to the needs of the many communities that have enacted it. We are not willing even to appraise the suggestion, unsupported in the record, that such wide use springs predominantly from the selfish influence of local merchants.

Even before this Court's decision in Martin v. City of Struthers, 319 U. S. 141, 63 S. Ct. 862, 87 L. Ed. 1313, holding invalid, when applied to a person distributing leaflets advertising a religious meeting, an ordinance of the City of Struthers, Ohio, forbidding the summoning of the occupants of a residence to the door, our less extreme cases had created comment. See Professor Zechariah Chafee, Free Speech in the United States (1942) 406.[27]

25. Emert v. Missouri, 156 U. S. 296, 15 S. Ct. 367, 39 L. Ed. 430; see Commonwealth v. Ober, 12 Cush., Mass., 493; Crenshaw v. Arkansas, 227 U. S. 389, 399-400, 33 S. Ct. 294, 297, 57 L. Ed. 565; Rogers v. Arkansas, 227 U. S. 401, 33 S. Ct. 298, 57 L. Ed. 569; Caskey Baking Co. v. Com. of Virginia, 313 U. S. 117, 119, 61 S. Ct. 881, 882, 85 L. Ed. 1223.

26. McGoldrick v. Berwind-White Co., 309 U. S. 33, 55-57, 60 S. Ct. 388, 397-398, 84 L. Ed. 565; Nippert v. Richmond, 327 U. S. 416, 421-425, 66 S. Ct. 586, 588-590.

27. "House to house canvassing raises more serious problems. Of all the methods of spreading unpopular ideas, this seems the least entitled to extensive protection. The possibilities of persuasion are slight compared with the certainties of annoyance. Great as is the value of exposing citizens to novel views, home is one place where a man ought to be able to shut himself up in his own ideas if he desires. There he should be free not only

To the city council falls the duty of protecting its citizens against the practices deemed subversive of privacy and of quiet. A householder depends for protection on his city board rather than churlishly guarding his entrances with orders forbidding the entrance of solicitors. A sign would have to be a small billboard to make the differentiations between the welcome and unwelcome that can be written in an ordinance once cheaply for all homes.

"The police power of a state extends beyond health, morals and safety, and comprehends the duty, within constitutional limitations, to protect the well-being and tranquility of a community."[28]

When there is a reasonable basis for legislation to protect the social, as distinguished from the economic, welfare of a community, it is not for this Court because of the Commerce Clause to deny the exercise locally of the sovereign power of Louisiana.[29] Changing living conditions or variations in

---

from unreasonable searches and seizures but also from hearing uninvited strangers expound distasteful doctrines. A doorbell cannot be disregarded like a handbill. It takes several minutes to ascertain the purpose of a propagandist and at least several more to get rid of him. * * * Moreover, hospitable housewives dislike to leave a visitor on a windy doorstep while he explains his errand, yet once he is inside the house robbery or worse may happen. So peddlers of ideas and salesmen of salvation in odd brands seem to call for regulation as much as the regular run of commercial canvassers. * * * Freedom of the home is as important as freedom of speech. I cannot help wondering whether the Justices of the Supreme Court are quite aware of the effect of organized front-door instrusions upon people who are not sheltered from zealots and imposters by a staff of servants or the locked entrance of an apartment house."

28. Kovacs v. Cooper, 366 U. S. 77, 83, 69 S. Ct. 448, 451, 93 L. Ed. 513.

29. United States v. Carolene Products Co., 304 U. S. 144, 154, 58 S. Ct. 778, 784, 82 L. Ed. 1234: "But by their vary nature such inquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it. Here the demurrer challenges the validity of the statute on its face and it is evident from all the considerations presented to Congress, and those of which we may take judicial notice, that the question is at least debatable whether commerce in filled milk should be left unregulated, or in some measure restricted, or wholly prohibited. As that decision was for Con-

the experiences or habits of different communities may well call. for different legislative regulations as to methods and manners of doing business. Powers of municipalities are subject to control by the states. Their judgment of local needs is made from a more intimate knowledge of local conditions than that of any other legislative body. We cannot say that this ordinance of Alexandria so burdens or impedes. interstate commerce as to exceed the regulatory powers of that city.

First Amendment.—Finally we come to a point not heretofore urged in this Court as a ground for the invalidation of a Green River ordinance. This is that such an ordinance is an abridgment of freedom of speech and the press. Only the press or oral advocates of ideas could urge this point. It was not open to the solicitors for gadgets or brushes. The point is not that the press is free of the ordinary restraints and regulations of the modern state, such as taxation or labor regulation, referred to above at note 24, but, as stated in appellant's brief, "because the ordinance places an arbitrary, unreasonable and undue burden upon a well established and essential method of distribution and circulation of lawful magazines and periodicals and, in effect, is tantamount to a prohibition of the utilization of such method." Regulations necessarily have elements of prohibition. Thus the argument is not that the money-making activities of the solicitor entitle him to go "in or upon private residences" at will, but that the distribution of periodicals through door-to-door canvassing is entitled to First Amendment protection.[30] This kind of distribution is said to be protected because the mere fact that money is made out of the distribution does not bar the publications from First Amendment protection.[31] We agree that the fact that periodicals are sold does not put them beyond the protection of the First Amendment.[32] The

gress, neither the finding of a court arrived at by weighing the evidence, nor the verdict of a jury can be substituted for it."

See Jamison v. Texas, 318 U. S. 413, 63 S. Ct. 669, 87 L. Ed. 869; Skiriotes v. Florida, 313 U. S. 69, 79, 61 S. Ct. 924, 930, 85 L. Ed. 1193; Hebert v. Louisiana, 272 U. S. 312, 316, 47 S. Ct. 103, 104, 71 L. Ed. 270.

30. Cf. Martin v. Struthers 319 U. S. 141, 146, 63 S. Ct. 862, 864, 87 L. Ed. 1313; Lovell v. City of Griffin, 303 U. S. 444, 452, 58 S. Ct. 666, 669, 82 L. Ed. 949.

31. Thomas v. Collins, 323 U. S. 516, 531, 65 S. Ct. 315, 323, 89 L. Ed. 430.

32. Cf. Kovacs v. Cooper, 336 U. S. 77, 88, note 14; concurrence at page 90, 69 S. Ct. 448, 454, 455. 93 L. Ed. 513. See note 24, supra.

selling, however, brings into the transaction a commercial feature.

The First and Fourteenth Amendments have never been treated as absolutes.[33] Freedom of speech or press does not mean that one can talk or distribute where, when and how one chooses. Rights other than those of the advocates are involved. By adjustment of rights, we can have full liberty of expression and an orderly life.

The case that comes nearest to supporting appellant's contention is Martin v. Struthers, 319 U. S. 141, 63 S. Ct., 862, 863. There a municipal ordinance forbidding anyone summoning the occupants of a residence to the door to receive advertisements was held invalid as applied to the free distribution of dodgers "advertising a religious meeting." Attention was directed in note 1 of that case to the fact that the ordinance was not aimed "solely at commercial advertising." It was said:

"The ordinance does not control anything but the distribution of literature, and in that respect it substitutes the judgment of the community for the judgment of the individual householder." 319 U. S. at pages 143-144, 63 S. Ct. at page 863.

The decision to release the distributor was because:

"Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that, putting aside reasonable police and health regulations of time and manner of distribution, it must be fully preserved." 319 U. S. at pages 146-147, 63 S. Ct. at page 865. There was dissent even to this carefully phrased application of the principles of the First Amendment. As no element of the commercial entered into this free solicitation and the opinion was narrowly limited to the precise fact of the free distribution of an invitation to religious services, we feel that it is not necessarily inconsistent with the conclusion reached in this case.

In Marsh v. Alabama, 326 U. S. 501, 66 S. Ct. 276, 90 L. Ed. 265, and Tucker v. Texas, 326 U. S. 517, 66 S. Ct., 274, 90 L.

33. Cantwell v. Connecticut, 310 U. S. 296, 303, 304, 60 S. Ct. 900, 903, 84 L. Ed. 1213; Cox v. New Hampshire, 312 U. S. 569, 61 S. Ct. 762, 85 L. Ed. 1049; Chaplinsky v. New Hampshire, 315 U. S. 568, 62 S. Ct. 766, 86 L. Ed. 1031; Murdock v. Pennsylvania, 319 U. S. 105, 109-110, 63 S. Ct. 870, 873, 87 L. Ed. 1292; Prince v. Massachusetts, 321 U. S. 158, 166, 64 S. Ct. 438, 442, 88 L. Ed. 645; Saia v. New York, 334 U. S. 558, 561, 68 S. Ct. 1148, 1150, 92 L. Ed. 1574; Feiner v. New York, 340 U. S. 315, 71 S. Ct. 303. See the collection of cases in Niemotko v. Maryland, 340 U. S. 268, at page 276 ff, 71 S. Ct. 325, 330.

Ed. 274,[34] a state was held by this Court unable to punish for trespass after notice under a state criminal statute certain distributors of printed matter, more religious than commercial. The statute was held invalid under the principles of the First Amendment. In the Marsh case it was a private corporation, in the Tucker case the United States, that owned the property used as permissive passways in company and government-owned towns. In neither case was there dedication to public use but it seems fair to say that the permissive use of the ways was considered equal to such dedication. Such protection was not extended to colporteurs offending similar state trespass laws by distributing, after notice to desist, like publications to the tenants in a private apartment house. Hall v. Virginia, 188 Va. 72, 49 S. E. 2d 369. Appeal, after conviction, on the ground of denial of First Amendment rights, dismissed on motion of appellee to dismiss because of lack of substance in the question. 335 U. S. 875, 912, 69 S. Ct., 240, 480, 93 L. Ed. 418; see note 2, supra.

Since it is not private individuals but the local and federal governments that are prohibited by the First and Fourteenth Amendments from abridging free speech or press, Hall v. Virginia does not rule a conviction for trespass after notice by ordinance. However, if as we have shown above, 71 S. Ct., 931, a city council may speak for the citizens on matters subject to the police power, we would have in the present prosecution the time-honored offense of trespass on private grounds after notice. Thus the Marsh and Tucker cases are not applicable here.

This makes the constitutionality of Alexandria's ordinance turn upon a balancing of the conveniences between some householders' desire for privacy and the publisher's right to distribute publications in the precise way that those soliciting for him think brings the best results. The issue brings into collision the rights of the hospitable housewife, peering on Monday morning around her chained door with those of Mr. Breard's courteous, well-trained but possibly persistent solicitor, offering a bargain on culture and information through a joint subscription to Satevepost, Pic and Today's Woman. Behind the housewife are many housewives and homeowners in the towns where Green River ordinances offer their aid. Behind Mr. Breard are "Keystone" with an annual business of $5,000,000 in subscriptions and the periodicals with their use of house-to-house canvassing to secure subscribers

34. These cases called forth numerous notes, e. g., 46 Col. L. Rev. 457; 34 Georgetown L. Rev. 244; 44 Mich. L. Rev. 848.

for their valuable publications, together with other house-wives who desire solicitors to offer them the opportunity and remind and help them, at their doors, to subscribe for publications.

Subscriptions may be made by anyone interested in receiving the magazines without the annoyances of house-to-house canvassing. We think those communities that have found these methods of sale obnoxious may control them by ordinance. It would be, it seems to us, a misuse of the great guarantees of free speech and free press to use that guarantee to force a community to admit the solicitors of publications to the home premises of its residents. We see no abridgement of the principles of the First Amendment in this ordinance. Affirmed.

MR. CHIEF JUSTICE VINSON, with whom MR. JUSTICE DOUGLAS, joins, dissenting.

The ordinance before us makes criminal the hitherto legitimate business practice of soliciting magazine subscriptions from door to door without prior invitation of the home owner. Looking only to the face of that ordinance, the Court sustains it as against objections under the Due Process Clause, the Commerce Clause and the First Amendment. I dissent and would reverse the judgment below without reaching all of the issues raised, for, in my opinion, the ordinance constitutes an undue and discriminatory burden on interstate commerce.

The Court holds that because the "ordinance falls in the classification of regulation," the city council is free to burden interstate commerce. 71 S. Ct., 931. In my view, the ordinance is a flat prohibition of solicitation. The Louisiana Supreme Court recognized this fact when it characterized the ordinance as "provid[ing] for a blanket prohibition of solicitation without invitation, save for food vendors, who are specifically exempt." 27 La. at page 828, 47 So. 2d at page 556. Unlike this Court, the state court acknowledged the prohibitory character of the ordinance in rejecting appellant's claim under the Commerce Clause in the following portion of its opinion:

"The ordinance imposes no tax, no license. It is a prohibition of an activity on local territory, involving the **problematical** sale of a commodity originating in another state, which is actually distributed through the United States Mails. It imposes no burden on the distribution itself, nor on the manufacture of the commodity, nor on any phase of the transportation from one place to another of that commodity." (Emphasis in original.) 217 La. at page 829, 47 So. 2d at page 556.

At least since the decision in Robbins v. Shelby County Taxing District, 1887, 120 U. S. 489, 497, 7 S. Ct., 592, 596, 30 L. Ed. 694, this Court has regarded the process of soliciting orders for goods to be shipped across state lines as being interstate commerce as much as the transportation itself. Under the line of cases following this principle, reexamined and reaffirmed in Nippert v. Richmond, 1946, 327 U. S. 416, 66 S. Ct. 586, 90 L. Ed. 760, the process of solicitation for interstate commerce cannot be subjected to taxes, licenses or bonding requirements that in their practical operation discriminate against or unduly burden interstate commerce. The Court does not today purport to overrule this line of decisions. And it acknowledges, as it must, that the Court has sharply distinguished the process of solicitation of interstate business from the essentially local retailing operations of hawking and peddling. See Wagner v. Covington, 1919, 251 U. S. 95, 103-104, 40 S. Ct., 93, 95, 65 L. Ed. 157, and cases cited therein. Nor does the opinion dispute that this ordinance has a severe economic impact upon the substantial interstate business of appellant's employer, as well as the entire magazine industry which derives 50% to 60% of its annual subscription circulation from the very type of solicitation prohibited by this ordinance. I disagree with the Court in its holding that an ordinance imposing a "blanket prohibition" can be sustained under the Commerce Clause as mere regulation.

Congress is given the power "To regulate commerce * * * among the several States." United States Constitution, Article I, Section 8, Clause 3. The doctrine of Cooley v. Board of Port Wardens, 1851, 12 How. 299, 13 L. Ed. 996, permits a state to exercise its police powers in a manner impinging upon interstate commerce only where the subject of regulation is essentially local and then only when there is no discrimination against or undue burden on interstate commerce. This is an approach grounded in the practical, an approach which imposes upon this Court the "duty to determine whether the statute [or ordinance] under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce." Best & Co. v. Maxwell, 1940, 311 U. S. 454, 455-456, 61 S. Ct., 334, 335, 85 L. Ed. 275. That this ordinance, on its face, professes to protect the home does not relieve us of our duty to weigh the practical effect of the ordinance upon interstate commerce. Lack of discrimination on its face has not heretofore been regarded as sufficient to sustain an ordinance without inquiry into its practical effects upon interstate commerce, E. g., Dean Milk Co. v. Madison, 1951, 340 U. S. 349, 354, 71 S. Ct., 295, 297 (prohibition against

sale of milk pasteurized more than five miles from city); Real Silk Hosiery Mills v. Portland, 1925, 268 U. S. 325, 336, 45 S. Ct., 525, 526, 69 L. Ed. 982 (requirement that solicitors file bond); Minnesota v. Barber, 1890, 136 U. S. 313, 10 S. Ct., 862, 34 L. Ed. 455 (statute requiring inspection of meat within state).

In passing upon other ordinances affecting solicitors, this Court has not hesitated in noting the economic fact that "the 'real competitors' of [solicitors] are, among others, the local retail merchants." Nippert v. Richmond, supra, 327 U. S. at page 433, 66 S. Ct., at page 594, citing Best & Co. v. Maxwell, supra. See also Robbins v. Shelby County Taxing District, supra, 120 U. S. at page 498, 7 S. Ct., 596. The Court acknowledges "effective competition" between solicitors and the local retail merchants, 71 S. Ct., 924, but is deliberate in its refusal to appraise the practical effect of this ordinance as a deterrent to interstate commerce, 71 S. Ct., 931. I think it plain that a "blanket prohibition" upon appellant's solicitation discriminates against and unduly burdens interstate commerce in favoring local retail merchants. "Whether or not it was so intended, those are its necessary effects." Nippert v. Richmond, supra, 327 U. S. at page 434, 66 S. Ct., at page 595. The fact that this ordinance exempts solicitation by the essentially local purveyors of farm products shows that local economic interests are relieved of the burdensome effects of the ordinance. No one doubts that protection of the home is a proper subject of legislation, but that end can be served without prohibiting interstate commerce. Our prior decisions cannot be avoided by limiting their authority to the limited categories of tax and license. On the contrary, we must guard against state action which, " 'in any form or under any guise, directly burden[s] the prosecution of interstate business'." Baldwin v. G. A. F. Seelig, Inc., 1935, 294 U. S. 511, 522, 55 S. Ct., 497, 500, 79 L. Ed. 1032, citing International Textbook Co. v. Pigg, 1910, 217 U. S. 91, 112, 30 S. Ct., 481, 487, 54 L. Ed. 678. See also Hood & Sons v. DuMond, 1949, 336 U. S. 525, 69 S. Ct., 657, 93 L. Ed. 865. I cannot agree that this Court should defer to the City Council of Alexandria as though we had before us an act of Congress regulating commerce. See 71 S. Ct., 931. "[T]his Court, and not the state legislature [or the city council], is under the commerce clause the final arbiter of the competing demands of state [or local] and national interests." Southern Pacific Co. v. Arizona, 1945, 325 U. S. 761, 769, 65 S. Ct., 1515, 1520, 89 L. Ed. 1915.

The Court relies upon Bunger v. Green River, 1937, 300 U. S. 638, 57 S. Ct., 510, 81 L. Ed. 854, where the conviction of a

Fuller Brush man was sustained under an ordinance akin to the one before us. The order was entered without argument, without opinion and with citation of the three cases discussed by the Court, 71 S. Ct., 927, each of which cases sustained as "incidental" to interstate commerce state action regulating local inspection and feeding of cattle, and the sale of produce.*

I would apply to this case the principles so recently announced in Dean Milk Co. v. Madison, 1951, 340 U. S. 349, 71 S. Ct., 295. In the course of its discussion of our Dean Milk decision, the Court remarks that in the instant case "Interstate commerce itself knocks on the local door." 71 S. Ct., 929. As I read the prior decisions of this Court, that fact, far from justifying avoidance of Dean Milk, buttresses my conclusion that the ordinance cannot be applied to appellant consonant with the Commerce Clause.

MR. JUSTICE BLACK, with whom MR. JUSTICE DOUGLAS joins, dissenting.

On May 3, 1943, this Court held that cities and states could not enforce laws which impose flat taxes on the privilege of door-to-door sales of religious literature, Jones v. Opelika, 319 U. S. 103, 63 S. Ct., 890, 87 L. Ed. 1290; Murdock v. Com. of Pennsylvania, 319 U. S. 105, 63 S. Ct., 870, 87 L. Ed. 1292, or which make it unlawful for persons to go from home to home knocking on doors and ringing doorbells to invite occupants to religious, political or other kinds of public meetings. Martin v. Struthers, 319 U. S. 141, 63 S. Ct., 862, 87 L. Ed. 1313. Over strong dissents, these laws were held to invade liberty of speech, press and religion in violation of the First and Fourteenth Amendments. Today a new majority adopts the position of the former dissenters and sustains a city ordinance forbidding door-to-door solicitation of subscriptions to the Saturday Evening Post, Newsweek and other magazines. Since this decision cannot be reconciled with the Jones, Murdock and Martin v. Struthers cases, it seems to me that good judicial practice calls for their forthright overruling. But whether this is done or not, it should be plain that my disagreement with the majority of the Court as now constituted stems basically from a different concept

---

*It is passing strange that, after relying on three cases grounded solely on "incidental" as a test of validity under the Commerce Clause, the Court should itself state that such a test "has not continued as a useful manner for determining the validity of local regulation of matters affecting interstate commerce." 71 S. Ct. 929, note 19.

of the reach of the constitutional liberty of the press rather than from any difference of opinion as to what former cases have held.

Today's decision marks a revitalization of the judicial views which prevailed before this Court embraced the philosophy that the First Amendment gives a preferred status to the liberties it protects. I adhere to that preferred position philosophy. It is my belief that the freedom of the people of this Nation cannot survive even a little governmental hobbling of religious or political ideas, whether they be communicated orally or through the press.

The constitutional sanctuary for the press must necessarily include liberty to publish and circulate. In view of our economic system, it must also include freedom to solicit paying subscribers. Of course home-owners can if they wish forbid newsboys, reporters or magazine solicitors to ring their doorbells. But when the homeowner himself has not done this, I believe that the First Amendment, interpreted with due regard for the freedoms it guarantees, bars laws like the present ordinance which punish persons who peacefully go from door to door as agents of the press.*

---

*Of course I believe that the present ordinance could constitutionally be applied to a "merchant" who goes from door to door "selling pots." Compare Martin v. Struthers, 319 U. S. 141, 144, 63 S. Ct. 862, 863, 87 L. Ed. 1313 with Valentine v. Chrestensen, 316 U. S. 52, 62 S. Ct. 920, 86 L. Ed. 1262.