

# The Attorney General of Texas

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

December 21, 1984

Honorable Bob Bullock
Comptroller of Public Accounts
L.B.J. State Office Building
Austin, Texas    78774

Opinion No. JM-263

Re: Whether imposition of the limited sales tax on the sale of newspapers violates the First Amendment to the United States Constitution

Dear Mr. Bullock:

Chapter 151 of the Tax Code imposes limited sales, excise, and use taxes on businesses operating within this state engaged in certain specified activities. Legislation enacted during the recently-completed special session repealed section 151.319 of the Tax Code which exempted the sale or distribution of newspapers from the imposition of the sales tax. Acts 1983, 68th Leg., 2nd C.S., ch. 31, art. 12, §3, at 552. The sale of newspapers, therefore, is now subject to the tax.

The First Amendment to the United States Constitution provides in pertinent part that "Congress shall make no law . . . abridging the freedom . . . of the press. . . ." It is applicable to the states by virtue of the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296 (1940). You ask us the following question:

> Does the imposition of the limited sales tax on the sale of newspapers violate the First Amendment to the United States Constitution?

You assert that the imposition of the tax on the sale of newspapers is a direct burden on freedom of the press. Citing Murdock v. Pennsylvania, 319 U.S. 105 (1943) and Follett v. Town of McCormick, S.C., 321 U.S. 573 (1944), you suggest in your letter that "[t]he fact that the sales tax is a tax of general application does not change this basic premise." We disagree. Subsequent Supreme Court cases suggest that it does not constitute an impermissible burden on the press. We conclude that the above-cited decisions are no longer controlling, and we answer your question in the negative.

Murdock v. Pennsylvania, supra, and its companion cases, Douglas v. City of Jeannette, 319 U.S. 157 (1943) and Jones v. City of Opelika, 319 U.S. 584 (1943), as well as Follett v. Town of McCormick, S.C., supra, each involved the application to religious missionaries

who sold religious tracts door-to-door of license taxes imposed upon those who sold books. The court concluded in each instance that the tax constituted an impermissible burden on the exercise of freedom of religion as applied to itinerant missionaries. The court characterized the activity of selling the religious tracts door-to-door as religious activity and concluded that imposition of the license tax was a direct burden on the free exercise of religion. You suggest that, analogously, the repeal of the sales tax exemption for newspapers is likewise an impermissible burden on freedom of the press.

However, these cases are not the court's last pronouncement on this subject. In Breard v. Alexandria, 341 U.S. 622 (1951), the court upheld, against a claim that it was violative, of the First Amendment, inter alia, a municipal ordinance which prohibited peddlers or canvassers from calling upon the occupants of private residences without having first been invited to do so. The court did not construe its decision as having overruled Murdock and its companion cases and Follett; the dissent, however, explicitly did so. 341 U.S. 622 at 648. Any doubt as to the effect of Breard on Murdock and Follett, however, was dispelled by the recent case of Minneapolis Star and Tribune Company v. Minnesota Commissioners of Revenue, 460 U.S. 575 (1983) [hereinafter Minneapolis Star Tribune]. It is to this case that we now turn.

In Minneapolis Star Tribune, the court struck down a Minnesota use tax imposed on newspaper ink and paper. The court declared the following:

> 9. Star Tribune insists that the premise of the State's argument -- that a generally applicable sales tax would be constitutional -- is incorrect, citing Follett v. McCormick, 321 U.S. 573, (1944), Murdock v. Pennsylvania, 319 U.S. 105, (1943), and Jones v. Opelika, 319 U.S. 103, (1943). We think that Breard v. Alexandria, 341 U.S. 622 (1951), is more relevant and rebuts Star Tribune's argument. There, we upheld an ordinance prohibiting door-to-door solicitation, even though it applied to prevent the door-to-door sale of subscriptions to magazines, an activity covered by the First Amendment. Although Martin v. Struthers, 319 U.S. 141 (1943), had struck down a similar ordinance as applied to the distribution of free religious literature, the Breard Court explained that case as emphasizing that the information distributed was religious in nature and that the distribution was noncommercial. 341 U.S., at 642-643. As the dissent in Breard recognized, the majority opinion substantially undercut both Martin and the cases now relied upon

by *Star Tribune*, in which the Court had invalidated ordinances imposing a flat license tax on the sale of religious literature. See 341 U.S. at, 649-650 (Black, J., dissenting) ('Since this decision cannot be reconciled with the *Jones*, *Murdock* and *Martin v. Struthers* cases, it seems to me that good judicial practice calls for their forthright overruling.') Whatever the value of those cases as authority after Breard, we think them distinguishable from a generally applicable sales tax. In each of those cases, the local government imposed a flat tax, unrelated to the receipts or income of the speaker or to the expenses of administering a valid regulatory scheme, as a condition of the right to speak. By imposing the tax as a condition of engaging in protected activity, the defendants in those cases imposed a form of prior restraint on speech, rendering the tax highly susceptible to constitutional challenge. *Follett*, *supra*, at 576-578; *Murdock*, *supra*, at 112, 113-114; *Jones v. Opelika*, 316 U.S. 584, 609, 611 (1942) (Stone, C.J., dissenting), reasoning approved on rehearing in 319 U.S. 103 (1943); see *Grosjean v. American Press Co., Inc.*, 297 U.S., at 249; see generally *Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931). In that regard, the cases cited by Star Tribune do not resemble a generally applicable sales tax. Indeed, our cases have consistently recognized that nondiscriminatory taxes on the receipts or income of newspapers would be permissible, *Branzburg v. Hayes*, 408 U.S. 665, 683 (dictum); *Grosjean v. American Press Co., Inc.*, *supra*, at 250 (dictum); cf. *Follett*, *supra*, at 578 (preacher subject to taxes on income or property) (dictum); *Murdock*, *supra*, at 112 (same) (dictum). (Emphasis added).

*Minneapolis Star Tribune*, fn. 9.

The First Amendment does not prohibit all regulation of the press; there is no question that the states or the federal government can subject newspapers to generally applicable economic regulations without violating the Constitution. As the court in *Grosjean v. American Press Co., Inc.*, *supra*, declared:

> It is not intended by anything we have said to suggest that the owners of newspapers are immune from any of the ordinary forms of taxation for support of the government.

297 U.S., at 250.  See, e.g., Citizen Publishing Co. v. United States, 394 U.S. 131 (1969) (antitrust laws); Lorain Journal Co. v. United States, 342 U.S. 143 (1951) (antitrust laws); Breard v. Alexandria, supra (prohibition of door-to-door solicitation); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186 (1946) (Fair Labor Standards Act); Mabee v. White Plains Publishing Co., 327 U.S. 178 (1946) (Fair Labor Standards Act); Associated Press v. United States, 326 U.S. 1 (1945) (antitrust laws); Associated Press v. NLRB, 301 U.S. 103 (1937) (National Labor Relations Act); see also Branzburg v. Hayes, 408 U.S. 665 (1972) (enforcement of subpoenas).  In Minneapolis Star Tribune, the court struck down the tax, not because it had the effect of imposing a burden on the press, but because the press was singled out for special treatment:

> Minnesota, however, has not chosen to apply its general sales and use tax to newspapers.  Instead, it has created a special tax that applies only to certain publications protected by the First Amendment.  Although the [s]tate argues now that the tax on paper and ink is part of the general scheme of taxation, the use tax provision . . . is facially discriminatory, singling out publications for treatment that is, to our knowledge, unique in Minnesota tax law.

460 U.S., at 581.  The court then set forth the following test:

> By creating this special use tax, which, to our knowledge, is without parallel in the State's tax scheme, Minnesota has singled out the press for special treatment.  We then must determine whether the First Amendment permits such special taxation.  A tax that burdens rights protected by the First Amendment cannot stand unless the burden is necessary to achieve an overriding governmental interest.  See, e.g., United States v. Lee, 455 U.S. 252 (1982).  Any tax that the press must pay, of course, imposes some 'burden.'  But, as we have observed, see supra, at 581, this Court has long upheld economic regulation of the press.  The cases approving such economic regulation, however, emphasized the general applicability of the challenged regulation to all businesses, e.g., Oklahoma Press Publishing Co. v. Walling, supra, at 194; Mabee v. White Plains Publishing Co., supra, at 184; Associated Press v. NLRB, supra, at 132-133 suggesting that a regulation that singled out the press might place a heavier burden of justification on the State, and we now conclude that the special problems created by differential treatment do indeed impose such a burden.

The Texas scheme of taxation, as opposed to the Minnesota scheme, does not single out the press for special treatment. On the contrary, the repeal of the sales tax exemption merely subjects newspapers to the generally applicable limited sales, excise, and use tax imposed on other businesses. Prior to the repeal, newspapers were singled out for special favorable treatment; that is no longer the case. Accordingly, we conclude that the imposition of the limited sales, excise, and use tax on the sale of newspapers does not violate the First Amendment.

## S U M M A R Y

The imposition of the limited excise and use tax on the sale of newspapers does not violate the First Amendment.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton
Bruce Youngblood