**LOCAL 189 INTERNATIONAL UNION OF POLICE ASSOCIATIONS, and Morris Toler, W. R. Moody, Sharon Moody, Bobby Hulsey, R. R. Roper, B. L. Pope, Scott Myer, W. O. Moore, Anthony Rollins and all others similarly situated, Plaintiffs,**

v.

**Ernest BARRETT, George Lankford, Butch Thompson, Wit Carson, Jr., Harvey Paschal, individually and as members of the Cobb County Board of Commissioners, William Buckner, individually and as Personnel Director of Cobb County, Georgia, Robert Hightower, individually and as Director of Public Safety of Cobb County, Georgia; and, Bull Hutson, individually and as Sheriff of Cobb County, Georgia, Defendants.**

Civ. A. No. C81–1557A.

United States District Court, N. D. Georgia, Atlanta Division.

Oct. 26, 1981.

12. See note 2, *supra*.

Edward T. M. Garland, Bettye Hynson Kehrer and Walter Moore Henritze, Jr., Garland, Nuckolls & Catts, P. C., Atlanta, Ga., for plaintiffs.

Edward Katze, Constangy, Brooks & Smith, Atlanta, Ga., Irma Glover, Sams, Glover, Gentry & Adams, Marietta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiffs, a group of policemen[1] employed by Cobb County, Georgia, have filed suit in this court seeking declaratory and injunctive relief and asking specifically that this court declare a resolution enacted by defendant Cobb County Commission on August 11, 1981, unconstitutional on its face and as applied, and enjoin defendants from enforcing this resolution and from dismissing, suspending, or otherwise interfering with plaintiffs'[2] occupation because of their activity in attempting to organize a labor union, Local 189 International Union of Police Associations, AFL–CIO. Jurisdiction is invoked pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

On August 19, 1981, this court denied plaintiffs' motion for a temporary restraining order on the grounds *inter alia* that plaintiffs had failed to demonstrate that they would suffer irreparable harm if the temporary restraining order were not issued. Thereafter, this court denied plaintiffs' motion for reconsideration as well, and plaintiffs then filed a motion for a

---

1. Plaintiffs include officers from both the Police Department and the Sheriff's Department of Cobb County.

2. As a part of their complaint for preliminary and permanent injunction, a temporary restraining order and declaratory judgment, plaintiffs move the court *inter alia* for an order "restraining defendants from dismissing or interfering with Defendants' occupation because of their union activity. . . ." The court notices that elsewhere in the complaint, in open court, and in post-hearing memoranda filed with the court, plaintiffs have sought an order enjoining defendants from interfering with plaintiffs' occupation. Applying a common sense interpretation to plaintiffs' request for declaratory and injunctive relief as one seeking protection in the form of personal job security, the court treats plaintiffs' request for relief accordingly.

preliminary injunction. Defendants moved to consolidate the evidentiary hearing scheduled for the court's consideration of plaintiffs' motion for a preliminary injunction with a trial on the merits; and, after receiving no opposition from plaintiffs, the court granted the motion and heard evidence on plaintiffs' motion for a permanent injunction on September 2–3, 1981. Having received post-hearing proposed findings of fact and conclusions of law and memoranda in support thereof from the parties, the court hereby issues the following findings of fact and conclusions of law.

### Findings of Fact

In early July 1981 some police officers employed by Cobb County approached the Director of Public Safety, Robert Hightower, and informed him of their desire to unionize and to demand that the Cobb County Commission recognize Local 189 as the collective bargaining agent for policemen and sheriff's deputies within the county. Thereupon, Mr. Hightower arranged an informal meeting between those representatives of the proposed Local 189 and certain commissioners so that they could discuss various issues which had surfaced as a result of the unionization effort. At that meeting policemen discussed the probability that at some point rank and file policemen and supervisors must be separated for the purpose of unionization.

Upon learning that the Cobb County policemen wanted to unionize, the Commission sought advice from legal counsel. The Commission indicated to counsel that they did not want to recognize any union as a bargaining agent for the policemen or to allow rank and file and supervisors to be members of the same union. The Commissioners were concerned that a conflict of interest may erupt between rank and file policemen and those officers responsible for disciplining and evaluating the performance of the rank and file if all officers were permitted to join the same union. In the vernacular, they were concerned about what would happen if a "blue flu" epidemic afflicted the rank and file or if rank and file would feel pressured to join a union by being "encouraged" to do so by their supervisors.

In response to these concerns of the Commission, counsel drafted a proposed resolution which was adopted by the Commission, as follows:

"WHEREAS, the Cobb County Board of Commissioners has met and conferred to discuss the question of recognizing or negotiating with a labor or other organization claiming to represent county employees, now, therefore, be it resolved:

1. The Cobb County Board of Commissioners has not and will not recognize or negotiate with any labor or other organization as a collective bargaining agent for any county employee or group of county employees.

2. There will be no discussion, formal or informal between Cobb County or any agent thereof and any labor or other organization claiming to represent county employees or any group of county employees.

3. Employees in a supervisory capacity are prohibited from joining, belonging to, or participating in any activities of any labor or other organization claiming to represent county employees or any group of county employees, which organization includes membership of rank and file employees of Cobb County.

4. The provisions of Chapter 89–13 of the Georgia Code Ann. are adopted as applicable to employees of Cobb County." [3]

---

3. The court notes that pursuant to Ga.Code Ann. § 89–1301, no public employee "shall promote, encourage, or participate in any strike," which includes "the failure to report for duty, the willful absence from one's position, the stoppage or deliberate slowing down of work, or the withholding, in whole or in part, of the full, faithful and proper performance of the duties of employment, for the purpose of inducing, influencing or causing a change in the conditions, compensation, rights, privileges or obligations of state employment ...." Ga. Code Ann. § 89–1302. If an employee violates this provision, he may be terminated. Ga.Code Ann. § 89–1303. Similarly, any person exercising authority, supervision or direction over an-

Counsel also prepared a checklist of nineteen (19) criteria for the purpose of ascertaining which persons should be classified as employees in a "supervisory capacity." This list was garnered from the Labor Management Relations Act (LMRA), 29 U.S.C. § 152(11), and case law interpreting it.

On August 12, 1981, Mr. William J. Buckner, Director of Personnel for Cobb County, sent the following memorandum to various department heads, including Robert Hightower, Director of Public Safety:

On August 11, 1981, the Board of Commissioners adopted the attached Resolution which states in part that County employees who serve in a supervisory capacity are not permitted to join, belong to or participate in the activities of a labor or other organization that claims to represent County rank and file employees. In order to determine which of the employees in your department are supervisors, the following criteria are listed for your guidance in making this determination:

— Does the individual have the authority to hire and fire subordinates?

— Does the individual have the authority to promote and demote subordinates?

— Can the individual "effectively recommend" (cause an action to become a reality with some consistency and predictability) the hiring, firing, promotion and demotion of subordinates?

— Does the individual have the authority to discipline other employees?

— Can the individual direct the work of others?

— Does the individual have the authority to transfer other employees?

— Does the individual have the authority to suspend, layoff, or recall other employees?

— How many employees does the individual direct? (The control of two or more employees enhances the possibilities of one being a bona fide supervisor).

— Does the individual use his/her own initiative and ingenuity in directing the work of others?

— In the absence of upper level managers, does the individual have the authority and responsibility to assume the boss's job?

— Do the requirements of the individual's job require that he/she exercise independent judgment in the interest of the employer rather than the performance of routine or clerical functions?

— Is the individual paid differently than the other employees he/she directs (i. e., salary versus hourly wage; overtime treatment)?

— Is the individual's salary indicated on organizational budgets as part of a managerial salary, part of the employees' wage bill or some separate category?

— Are entry requirements for supervisory jobs different than those for unit employees?

— Is the individual's job concerned with directing, developing and evaluating others as opposed to doing the same work as the unit employees?

— Does the individual process grievances for management?

— Is the individual included in regular management meetings that are not attended by rank and file employees?

— Is the individual accountable for the work of others?

— Is the individual considered by his fellow workers and by himself to be a supervisor?

In applying these criteria, it is important to remember that the status of supervisor is determined by an individual's actual duties, not simply by his or her title or job classification. Special attention should also be given to whether an

other state employee, is prohibited from authorizing, offering or consenting to a strike by state employees. Ga.Code Ann. § 89–1304.

individual exercises independent judgment in the interest of the employer in the performance of the job.

After you have made a determination of which of your employees are supervisors, please fill out a checklist for each such employee and forward these checklists to me. The checklist should include the individual's name and rank, position, or job classification. The results will then be reviewed and evaluated by our attorneys to ensure that we are within the law in our determination. If you have any questions, please do not hesitate to get in touch with me.

In response to this memorandum, Mr. Hightower reviewed the activities of police officers and compared their duties with those included on the checklist provided by counsel and incorporated in the Buckner memo. In so doing, he concluded that of the 19 criteria listed, 14 applied to the ranks of sergeant and lieutenant; 16, to that of captain; 18, to those of lieutenant colonel, colonel and assistant director; and all 19, to the Director.

Thereafter, on August 13, 1981, Director Hightower issued the following order to all personnel within the Police Department:

On August 11, 1981, the Board of Commissioners adopted a resolution which stated in part that County Employees who serve in a supervisory capacity are not permitted to join, belong to or participate in the activities of a labor or other organization that claims to represent county rank and file employees. Guidelines were provided which when applied to the supervisory ranks within the Police Department definitely established that every departmental employee who holds the rank of Sergeant, Lieutenant, Captain, Major, Lieutenant Colonel, Colonel and Ass't. Director are definitely supervisors within the context of those guidelines. These guidelines are not arbitrary guidelines which were drawn up by the County, but are the result of legal precedents having been set in court cases in the past to legally define exactly what a supervisor is.

In view of this, it is hereby ordered, with the full backing of the Board of Commissioners of Cobb County, that no one within the Police Department holding the rank of Sergeant, Lieutenant, Captain, Major, Lieutenant Colonel, Colonel or Assistant Director can belong to or hold membership in any union which claims to represent County rank and file employees. Effective immediately, anyone holding the above listed ranks within the Police Department who continue their membership in any such union will be willfully disobeying a direct order and subject to disciplinary charges of insubordination and further subject to severe disciplinary action by the department.

I would urge every supervisor covered by this memorandum to seriously consider the practical as well as the legal realities of this order.

Officers of various ranks within the Cobb County police force disagreed with Mr. Hightower's assessment that all officers holding the ranks of sergeant and above were properly characterized as "supervisory personnel." Testimony indicated that supervisory authority differed from rank to rank, officer to officer, depending upon the particular situation at hand. That is, as illustrative examples indicate, in a given situation, a lower ranking officer may direct the course of a particular investigation conducted by a team of policemen while in another he may proceed alone, supervising no one. They agreed, however, that being "subject to severe disciplinary action by the department" may well include discharge from the force.

The evidence also showed that prior to the attempted organization of Local 189 and continuing up to the present, officers of all ranks, those considered by Hightower to be supervisors and those considered by him to be rank and file, have been included in the membership of the Fraternal Order of Police (FOP) and the Peace Officers Association of Georgia (POAG). Sargeant Cahila, in a representative capacity as President of the local chapter of the FOP, has met with Director Hightower, to discuss conditions of

employment. Several years ago, the FOP contracted with legal counsel to represent policemen in Cobb County in preparing a lawsuit having to do with wages to file against the county.

Also prior to the enactment of the resolution at issue here, the Commission had adopted and approved the General Order Manual of Cobb County, which provided *inter alia*, that county employees had the right to join any labor organization. The order which gives this right to county employees has not been expressly repealed or amended.

*Conclusions of Law*

Plaintiffs ask this court to declare the subject resolution unenforceable because its enactment violates the procedural requirements set forth in the constitution of the State of Georgia and because the resolution, as written and as applied, violates the United States Constitution. More specifically, plaintiffs claim that the Commission failed to meet the state constitutional requirements for enactment, Ga.Code Ann. §§ 2–5901 and 2–5903 (1977), because (1) the subject resolution which restricts supervisory personnel to membership in a union which does not include rank and file conflicts with the prior enacted ordinance which allows county employees to join any union (General Order Manual, Order Number 76–6, Section 43A), and that order has never been expressly repealed or amended, and (2) the Commission did not comply with the notice and hearing requirements of the Georgia Constitution. Plaintiffs also claim that the resolution as written impermissibly restricts their rights of free speech and free association as guaranteed by the first amendment without due process of law because the resolution is unconstitutionally overbroad and vague; that consequently, it also restricts their right to equal protection as guaranteed by the fourteenth amendment because the restriction of their first amendment rights does not clearly serve a legitimate state interest which will in fact be served by the enactment of this resolution and because the restriction is not the least

drastic of those which will accomplish the state's purpose; and that, as applied, it likewise denies them the constitutional guarantee of equal protection because it is being selectively enforced. Plaintiffs, therefore, ask the court to declare the resolution unconstitutional and to enjoin its enforcement against them pursuant to 42 U.S.C. § 1983.

*State Constitutional Challenges*

 This Court concludes that the provisions of the County Home Rule Statute, incorporated in the Constitution of the State of Georgia of 1976, Ga.Code Ann. §§ 2–5901 and 2–5903 (1977), apply only when a county attempts to "amend or repeal the local acts applicable to its governing authority," Ga.Code Ann. § 2–5901(b), and, consequently, do not apply to the facts of this case. Accordingly, the county's failure to comply with the procedural requisites of the County Home Rule Statute, if any, is of no consequence with respect to the adoption of this resolution.

*Federal Constitutional Challenges*

 Plaintiffs ask this court to enjoin enforcement of this resolution on the grounds, *inter alia*, that the resolution as written is unconstitutionally overbroad and vague. While these two concepts may be separate ones, they often, as in this case, go hand in hand. *See generally*, J. Nowak, R. Rotunda and J. N. Young, *Constitutional Law*, at 722 (1978). In this case the subject resolution suffers from both fatal defects. Two problematic phrases or terms, (1) "Employees in a supervisory capacity," and (2) "any labor or other organization claiming to represent . . . " appear elsewhere in the resolution as well, but are particularly objectionable in the third paragraph, wherein employees so described "are prohibited from joining, belonging to or participating in any activities" of any organization so characterized as "claiming to represent county employees or any group of county employees which organization includes membership of rank and file employees of Cobb County."

In so holding, the court recognizes that the restrictions which the Commission apparently intended to impose, that is, separation of supervisory from rank and file officers for purposes of union membership, may well serve valid and important state interests. *See, e. g., Local 2263, International Association of Fire Fighters, AFL–CIO v. City of Tupelo, Miss.,* 439 F.Supp. 1224, 1230–31 (N.D.Miss.1977). Moreover, such separation can be required by a narrowly drawn and clearly defined ordinance which may well pass constitutional muster in that it does not impermissibly violate public employees' first amendment rights of free speech and free association or their fourteenth amendment guarantee of equal protection. *Id.* Nonetheless, with respect to the resolution at issue here, this court concludes that "however permissible, even commendable, the goals of [this resolution] may be, its language is unconstitutionally vague and its prohibitions too broad in their sweep, failing to distinguish between conduct that may be proscribed and conduct that must be permitted." *Broadrick v. Oklahoma,* 413 U.S. 601, 606–07, 93 S.Ct. 2908, 2912–13, 37 L.Ed.2d 830 (1973). For these reasons, this court declares paragraph 3 of said resolution void and unenforceable against plaintiffs. Furthermore, because the terms "supervisory capacity" and "represent" are not specifically defined or specially modified, this court concludes that the resolution is unconstitutionally overbroad and vague as written.

In short, this resolution as written fails to give adequate warning of the activities it proscribes and to set out "explicit standards" for those who must apply it. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). The first failure is well illustrated by the fact that the terms used are subject to interpretation of wide latitude; the second, by the fact that outside counsel prepared a 19-point checklist for the Director of Personnel and department heads to apply to activities of the employees of Cobb County to determine if paragraph 3 of the resolution in fact applied to them.

The testimony of the police officers, commissioners, and personnel director before this court illustrate the fact that the term "supervisory capacity" is not uniformly defined and understood. Moreover, the checklist of 19 criteria prepared by counsel for the purpose of guiding the department heads in determining which employees within each department were to be considered those "in a supervisory capacity" indicates the necessity for clarifying the term outside the resolution. That counsel also asks this court to notice that "supervisor" is a term of art in the field of labor law and is best and most clearly defined in the Labor Management Relations Act, 29 U.S.C. § 152(11). The court concludes, however, that counsel's argument buttresses the conclusion that only a specialist and not the "ordinary person exercising ordinary common sense can sufficiently understand and comply with" the restrictions imposed by the terms of this resolution unless the terms are defined in the resolution. *CSC v. Letter Carriers,* 413 U.S. 548, 579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973). Just as the definitions of terms are included in the LMRA, 29 U.S.C. § 152, so ought they to be included in this resolution.

Similarly, the court concludes that the phrase "other organization claiming to represent" is insufficiently defined in the subject resolution. Defendants urge the court to conclude that the use of "collective bargaining agent" elsewhere in the resolution precisely defines what is meant by "represent" and the repeated use of the word "labor" further qualifies "other organization" so that the meaning of that term is clear. The court is unpersuaded by this argument. The word "represent" has no fewer than twelve definitions in an ordinary desk dictionary, of which only one subsection of one of the twelve defines "represent" as "to act as agent for" and that definition does not elaborate on or specify the purpose of that agency. For the court to interpret "represent" as "serve as collective bargaining agent for" and thereby supply a specialized definition of the term within the field of labor law, then the court must do more than construe the reso-

lution; it must re-write it. Similarly, if the court accepts defendants' argument that "labor" sufficiently defines "other," then it would be required to conclude that the resolution is redundant and that this wording is meaningless and to revise the resolution by deleting the verbiage.

The second failure is obvious from the resolution in that the standards to apply to employees to determine which are acting "in a supervisory capacity" are nowhere set forth in the resolution. In fact, not only did the Director of Personnel provide to each department heads a list of criteria prepared by legal counsel so that each could "determine which of the employees in your department are supervisors," but he also instructed them to forward the completed checklists to him so that the results would "then be reviewed and evaluated by our attorneys to ensure that we are within the law in our determination." The necessity for those making this determination to have such an elaborate review indicates that the standards were in fact neither explicit nor implicit.

Because the meaning of the resolution is so unclear, the resolution must be declared void for vagueness. Likewise, because of the ambiguity of the proscribed activity, it appears that the resolution encompasses within its sweep legitimate activity as well and may be struck for overbreadth. In so holding, the court recognizes that "[a]pplication of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort. Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Broadrick v. Oklahoma, supra,* 413 U.S. at 613, 93 S.Ct. at 2916, citing *Dombrowski v. Pfister,* 380 U.S. 479, at 491, 85 S.Ct. 1116, at 1123, 14 L.Ed.2d 22; *Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941); *United States v. Thirty-seven Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); *cf. Breard v. Alexandria,* 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951).

As that court noted, "particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* at 615, 93 S.Ct. 2917.

However, as has been noted, for this court to uphold this resolution, it must do more than construe the resolution; it must re-write it. Accordingly, no permissible limitation may be imposed on the resolution as written. Moreover, from the testimony adduced at the hearing, the distinctions, if any, between the activities and goals of proposed Local 189 and those of the local chapter of the Fraternal Order of Police are not at all clear; yet the Director of Public Safety has indicated that he considers Local 189 to fall within the proscription of the resolution and the FOP, outside its ambit. The court notes that in at least one case cited by defendants, a police chief was discharged in part because of his publicly announced support of the FOP. *Key v. Rutherford,* 645 F.2d 880 (10th Cir. 1981). Without an explicit definition of the kind of organization covered by this resolution, then it appears that both legitimate and illegitimate activities are proscribed or that a reasonable person would not be able to ascertain whether or not his conduct is lawful.

The court having concluded that this resolution is unconstitutional on its face because of vagueness and overbreadth, then it need not reach the merits of plaintiffs' claims that it is unconstitutional as applied or that it denies them equal protection because the state has failed to demonstrate a legitimate state interest actually served by a limitation drawn by the least restrictive means.

Acknowledging the defendants' concerns that motivated the enactment of this resolution and the defendants' right, consistent with plaintiffs' first amendment rights, to proscribe membership by supervisory and rank and file employees in the same union, the court declares this resolution void and unenforceable as written and enjoins de-

fendants from enforcing the same, effective November 9, 1981.