**Donald D. BACON, Plaintiff,**

v.

**BRADLEY–BOURBONNAIS HIGH SCHOOL DISTRICT NO. 307, Defendants.**

**No. 88–2029.**

United States District Court, C.D. Illinois, Danville Division.

Feb. 10, 1989.

Thomas E. McClure, Elliott & McClure, Bourbonnais, Ill., for plaintiff.

Alan F. Smietanski, Kankakee, Ill., Edward Wagner, Urbana, Ill., for Bradley–Bourbonnais.

## ORDER

BAKER, Chief Judge.

The plaintiff, Donald Bacon, seeks equitable, declaratory, and compensatory relief against the defendant, Bradley–Bourbonnais High School District No. 307. The plaintiff claims that the defendant, acting under color of state law, in violation of the provisions of 42 U.S.C. § 1983, deprived Bacon of his constitutional rights under the First and Fourteenth Amendments. Bacon says that the defendant prohibited him from distributing Gideon Bibles on the public sidewalk in front of the high school in Bradley, Illinois.[1] Specifically, Bacon claims that the defendant violated his rights to freedom of speech and assembly under the First and Fourteenth Amendments and his right to equal protection under the Fourteenth Amendment.[2] Bacon seeks a judgment declaring District 307's conduct unconstitutional and enjoining the

---

1. David Greenstreet, Chief of Police of the City of Bradley, Illinois, was originally named as a defendant but the court granted Greenstreet's motion to dismiss on May 9, 1988, after finding that Bacon's suit against Greenstreet was premature and failed to present an actual controversy.

2. Bacon also claimed a violation of his right to free exercise of religion under the First and Fourteenth Amendments. The court dismissed that claim on May 9, 1988, and defined the claim as one centered on free speech and equal protection. See Order of May 9, 1988.

District from preventing his distribution of Bibles on the sidewalk in front of the high school in Bradley. Bacon also prays for compensatory damages, costs, and attorneys fees.[3]

On November 9, 1988, the court held a hearing on the plaintiff's and the defendant's cross-motions for summary judgment. During the hearing, both parties indicated that they had no additional evidence to adduce and that the court should decide the case on the record that had been presented. Under Fed.R.Civ.P. 39(b), issues not demanded for trial by jury shall be tried by the court. The record shows that neither party demanded a jury trial but asked the court to resolve the issues. Transcript, Nov. 9, 1988, pp. 28–31. Pursuant to Fed.R.Civ.P. 39(b), therefore, the court makes the following findings of fact and conclusions of law.

## BACKGROUND

Bacon and others first tried to distribute Bibles in front of the high school in Bradley in May, 1985. On that occasion District 307 Superintendent Donald Turner told Bacon and about five to seven other people who had started to distribute Bibles that they would have to leave the sidewalk in front of the high school. The Bible distributors then moved to the other side of the street where they were effectively unable to distribute the Bibles to the high school students who remained on the sidewalk in front of the high school.

During the week of May 4, 1987, Bacon met with Turner and told him that Bacon intended to distribute Bibles to persons using the sidewalk in front of the high school. Turner told Bacon that such distribution would be illegal.

Bacon subsequently received two letters from the attorney for District 307. The first of those letters, dated May 26, 1987, stated, among other things, that the sidewalk in front of the high school was not a public forum and that distributing Bibles would violate state law.[4] The first letter also said that law enforcement authorities would be requested to enforce the State law if the plaintiff undertook Bible distribution as he said he planned. The second letter from the District 307 attorney, dated July 24, 1987, stated that the school district would not change its policy and that distributing Bibles on the sidewalk in front of the high school would not be permitted. In response, Bacon filed this suit.

The depositions and affidavits on file, the video tape of the sidewalk and the front of the high school in Bradley, Defendants' Exhibit C, and the transcript of the statements by counsel on November 9, 1988, establish that the front of the high school and the main entrance and exit of the building face south. The video tape shows North Street running along the south side of the high school. Grand Avenue is to the east of the main entrance. The sidewalk connects with a walkway that goes to the main entrance of the high school which consists of steps and pillars leading to entry doors. The sidewalk is four to six feet in width and runs east and west in front of the school. The sidewalk is located between the school building and North Street and abuts North Street. North Street, the video tape shows, is a four-lane street with a fifth or parking lane in front of the school. The sidewalk passing in front of the school connects with the sidewalks maintained by the Village of Bradley at the east and west ends of the school property. It is uncontested that Bacon indicated he wanted to stand on the sidewalk between the curb and the steps leading up into the high school and pass out Bibles to whomever would accept them. It is also uncontested that the school district allows teach-

---

**3.** In a telephone conference with the court and opposing counsel, Bacon's attorney stipulated that there was no claim for actual pecuniary loss.

**4.** Under Illinois state law an individual who enters upon land supported in whole or in part with State funds after receiving notice that such entry is forbidden commits a Class A misdemeanor. S.H.A. ch. 38, ¶ 21–5 (Supp.1987).

ers to picket on that sidewalk and hand out leaflets.

### FIRST AMENDMENT CLAIMS

District 307 offers several arguments to support its refusal to allow Bacon to distribute Bibles on the sidewalk in front of the school. First, District 307 argues that the sidewalk in question, which is school owned, is not a public forum. Because the sidewalk is a non-public forum, the defendant argues, the policy of the school district not to allow distribution of any materials in front of the high school may be distinguished from the government's attempt to restrict all communicative activity in a public forum. District 307 contends that the function of this secular, secondary school is to provide a secondary education to minor children and that any area "on school grounds," which includes the sidewalk, should not be considered a public forum. As public property not intended to be a forum for public expression of ideas and opinions, therefore, the sidewalk in front of the school is not to be opened to the public for any type of free speech or expressive activities.

While school grounds are generally not considered to be public fora, *see May v. Evansville–Vanderburgh School Corp.*, 787 F.2d 1105, 1114 (7th Cir.1986) and school administrators are given "broad discretion in supervising the visitation of the school environment by persons not associated with the school," *Texas State Teachers Association v. Garland Independent School District*, 777 F.2d 1046, 1050–51 (5th Cir.1985), *aff'd*, 479 U.S. 801, 107 S.Ct. 41, 93 L.Ed.2d 4 (1986), sidewalks are considered to be public fora. *United States v. Belsky*, 799 F.2d 1485, 1489 (11th Cir.1986). Furthermore, the Supreme Court has noted that, in some cases, the sidewalk surrounding a public property may be considered a public forum even though the property itself is not a public forum. *United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983).

■ The court finds that the sidewalk in front of the high school is a public sidewalk and is a public forum. Pedestrians walking along North Street, as well as students approaching or leaving the high school, use the sidewalk in front of the high school. Nothing alerts individuals using the sidewalk that they are entering school property and nothing is posted that restricts the public's use of the sidewalk. Anyone walking on the north side of North Street toward the Methodist Church from Grand Avenue must walk along the sidewalk outside the high school. It is nonsense to say that the sidewalk in front of the high school, considering its unrestricted use by pedestrians, is not a public way and therefore not a public forum.

It is well established that the government cannot prohibit all communicative activity in traditional public fora such as public streets and sidewalks. *See Frisby v. Schultz*, —— U.S. ——, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), *citing Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 (1983). Once an area has been determined to be a public forum, the question then becomes whether a regulation on expressive activity is a restriction which is reasonable in time, place, and manner.

■ The school district's policy, enforced by the Superintendent, is not to allow the distribution of any materials on the sidewalk in front of the high school. This policy has been enforced for the past twenty-five years. The ban on distributing materials is in effect twenty-four hours a day, seven days a week. In his testimony at the hearing, Superintendent Turner said the ban would cover boy scout masters passing out scout literature and parents from picketing to get more milk served with lunch. (Tr. at 14–15.)

District 307 gives two main reasons for its ban against distributing materials on the sidewalk in front of the high school. District 307 argues first that given the location of the school in relation to North Street, congestion would result and create a condition hazardous to students. There

is constant vehicular traffic on North Street during school hours, and if the students were standing around, one might fall or step off the curb and get hit by a car, Superintendent Turner says. A second reason that District 307 gives for the ban on distribution of materials is that it is concerned that someone might try to distribute drugs. In this regard Superintendent Turner testified that two gang members had been seen trying to contact students as they came out of school during October, 1987.

Notwithstanding Turner's fears, District 307 is unable to cite a single incident or problem arising from the distribution of literature on the sidewalk in front of the high school. The defendant argues that it is precisely because of the policy banning the distribution of literature that the defendant cannot cite any concrete reasons for the policy. (Tr. at 22, 28.) The court finds this argument disingenuous. In showing that behavior materially and substantially disrupts the work and discipline of a school, "the administration must rely on reasonable inferences drawn from concrete facts, not on the mere apprehension or speculation that disturbances or interferences with appropriate discipline will occur." *Perry Local Educators' Association v. Hohlt*, 652 F.2d 1286, 1300–01 (7th Cir.1981), *citing Connecticut S.F.T.*, 538 F.2d 471, 478 (2d Cir.1976); *rev'd on other grounds, Perry Education Association v. Perry Local Educators' Association, supra.*

■ District 307 also argues in support of its policy not to allow distribution of materials on the sidewalk, that to permit Bacon to pass out Bibles would violate the Establishment Clause of the First Amendment because permitting him to do so would in effect be to further religious activity. This argument is patently absurd. A violation of the Establishment Clause would arise in the present case only if District 307 were to allow Bacon but no one else to distribute religious materials. For the same reasons the court advanced to

dispose of Bacon's free exercise questions, *See* Order of May 9, 1988, the court finds there is no Establishment Clause question.

The court is of the opinion that the present case is controlled by *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). In striking the ordinance that prohibited all picketing within a hundred feet of a school except peaceful picketing of any school involved in a labor dispute, the Supreme Court stated,

> Just as *Tinker* made clear that school property may not be declared off limits for expressive activity by students, we think it clear that the public sidewalk adjacent to school grounds may not be declared off limits for expressive activity by members of the public. But in each case, expressive activity may be prohibited if it "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Citing Tinker v. Des Moines School District*, 393 U.S. 503 at 513, 89 S.Ct. 733 at 740, 21 L.Ed. 2d 731 (1969).

District 307 argues that *Grayned* is distinguishable because safety was not a factor in that case. The court, however, is unpersuaded by that argument. As noted, defendants cannot relate a single incident in which distributing literature on the sidewalk has given rise to a safety problem.

## EQUAL PROTECTION CLAIM

■ Bacon also claims that District 307 violated his Equal Protection rights under the Fourteenth Amendment because it permitted teachers to picket, while prohibiting him from distributing Bibles. While Bacon characterizes the school district's policy as prohibiting only religious speech in the public forum, the policy in fact prohibits all expressive activity, except that of its own teachers, to conduct peaceful informational picketing. This policy is substantially similar to the ordinances that the Supreme Court condemned on equal protection grounds in *Police Department of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33

L.Ed.2d 212 (1972) and *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The court therefore concludes that the school district's ban on all expressive activity except peaceful picketing by teachers violates Bacon's right to equal protection.

### DAMAGES

We turn now to the issues of damages. The question is this: Can Bacon, who has suffered no actual pecuniary loss,[5] recover more than nominal damages for loss of his substantive rights secured by the First and Fourteenth Amendments? In *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1977), the Supreme Court held that public school students who proved a violation of their right to procedural due process but had not presented proof of "actual injury," could only receive nominal damages. *Carey* left open the question whether a plaintiff, absent proof of "actual injury" could recover more than nominal damages for constitutional violations of substantive rights. This question was subsequently answered in *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). In *Stachura,* the Supreme Court held that "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages ... [in § 1983 cases]." *Id.* at 310, 106 S.Ct. at 2545.

Bacon argues both that distributing Bibles was important to him and that as a result of pursuing this litigation, he has had to resign his membership in the Gideon Society. Bacon, however, has failed to prove any compensatory damages. Because *Stachura* precludes awards of compensatory damages for abstract deprivations of constitutional rights, Bacon is not entitled to recover compensatory damages

for the deprivation of his First Amendment right to free speech.

IT IS THEREFORE ORDERED that the defendant, its agents and employees, are enjoined and restrained from preventing or forbidding the plaintiff's distribution of printed materials, specifically but not limited to Gideon Bibles, to persons passing on the sidewalk in front of the high school operated by the defendant in Bradley, Illinois.

IT IS FURTHER ORDERED that the plaintiff recover the sum of one dollar from the defendant as nominal damages for infringement of the plaintiff's First and Fourteenth Amendment rights.

The court further declares that the defendant's conduct forbidding the plaintiff to distribute written material, specifically Gideon Bibles, to persons on the sidewalk on the north side of the defendant's high school in Bradley, Illinois, is a violation of the plaintiff's right to free speech under the First and Fourteenth Amendments and his right to equal protection of the law under the Fourteenth Amendment.

The plaintiff is directed to file a petition for attorney's fees within twenty-eight (28) days, and the defendant is directed to answer the petition fourteen (14) days thereafter. The case is allotted for hearing on the petition for fees on March 21, 1989, at 1:30 p.m.

---

5. No allegation was made and no evidence offered to support a finding that Bacon experienced emotional distress or out-of-pocket loss.