The Honorable David Choate State Representative 709 N. Main Street Beebe, Arkansas 72012-3048
Dear Representative Choate:
This is in response to your request for an opinion on three questions involving the "Freedom of Speech" and "Establishment Clauses" of the United States Constitution. Specifically, you note that you have become aware of certain situations on the campus of the Beebe Branch of Arkansas State University which prompt your questions. It is my understanding that the issue involves the distribution of Gideon Bibles. Your three specific questions are as follows:
 1. May religious organizations distribute religious materials on the grounds and in the buildings of state supported institutions of higher education?
 2. If so, are there any restrictions which may be placed upon their distribution?
 3. If not, how can the organization's free speech rights be accommodated?
The answer to your first question will depend upon the exact facts surrounding the distribution of the religious materials, including the place of their distribution and the extent of the University's involvement with the distribution. Some distribution of religious materials might be a valid exercise of free speech rights. The University may in some instances be prohibited from denying the exercise of these rights. The University must also, however, be careful to refrain from violating the "Establishment Clause" of the U.S. Constitution. The clash of these two constitutional mandates leaves an area of activity between them which is constitutionally permissible.
Some explanation is necessary. Under the "Free Speech" provisions of the First Amendment, the degree of protection afforded speech depends upon the place where the speech occurs.
As stated in Paulsen v. County of Nassau, 925 F.2d 65 (2d Cir. 1991), citing Perry Education Assn. v. Perry Local Educators' Assn., 460 U.S. 37 (1983):
 Government-owned property has been divided into three categories for purposes of forum analysis: (1) traditional public forums, which `by long tradition or by government fiat have been devoted to assembly and debate,' [Perry, supra] including such areas as public streets, parks and sidewalks; (2) Public forums by government designation that are state-created and opened for limited public use, for example, university meeting facilities and municipal theaters; and (3) nonpublic forums which, by tradition or design, are not appropriate platforms for unrestrained communication Ä military installations and federal workplaces, for instance, fall into this category.
Paulsen, supra at 68-69.
It has been held that certain areas of public universities are "public forums" requiring heightened review. Widmar v. Vincent,454 U.S. 263 (1981) (holding a state university's refusal to grant student religious groups access to university facilities generally open to other student groups violative of theFirst Amendment); and Spartacus Youth League v. Board of Trustees of Illinois, 502 F.Supp. 789 (N.D. Ill. 1980) (holding student union and campus walkways "public forums"). See also Hays County Guardian v. Supple, 969 F.2d 111 (5th Cir. 1992), cert. denied,113 S. Ct. 1067 (1993) (holding the outdoor grounds of state university, such as the sidewalks and plazas, designated public fora); Jones v. Board of Regents, 436 F.2d 618 (9th Cir. 1971) (state university cannot constitutionally prohibit the distribution of all handbills on that part of its campus grounds which are open to the public generally); University of Utah Students Against Apartheid v. Peterson, 649 F.Supp. 1200 (D. Utah 1986) (outdoor location near student union building is at least a limited public forum); Brubaker v. Moelchert, 405 F.Supp. 837
(W.D.N.C. 1975) (open outdoor areas of campus are public forums); Dunkel v. Elkins, 352 F.Supp. 1235 (D. Md. 1971) (campus of state university is in some instances a public forum); and Hammond v. South Carolina State College, 272 F.Supp. 947 (D.S.C. 1967) (entire campus of state college is a public forum). In such places the University may only regulate speech with reasonable time, place, or manner restrictions that are 1) content neutral 2) narrowly tailored to serve a significant government interest, and 3) leave open ample alternative channels of communication.[1]
On the other hand, if the University is excessively entangled with the distribution of the religious materials, an "Establishment Clause" violation may occur. For example, it has been held that the distribution of Gideon Bibles in public school classrooms, at least to elementary students, violates the Establishment Clause. See Berger v. Rensselaer Central School Corporation, 982 F.2d 1160 (7th Cir. 1993), cert. denied113 S.Ct. 2344 (1993); Goodwin v. Cross County School District No. 7,394 F.Supp. 417 (E.D. Ark. 1973); and Tudor v. Board of Education, 14 N.J. 31, 100 A.2d 857 (1953), cert. denied,348 U.S. 816 (1954). But cf. Meltzer v. Board of Public Instruction of Orange County, 548 F.2d 559 (Cir. 1977) reh. granted, 553 F.2d 1008 (1977) on reh., 577 F.2d 311 (1978) (confining distribution to one central location upheld by an equally divided court), cert. denied 439 U.S. 1089 (1979). In each of the first three cases, however, the Bibles were distributed to young children in either a classroom setting during instructional time, or in an assembly specifically called for the purpose. The courts in these cases noted that these circumstances could not "but leave the imprimatur of state involvement." Berger, supra, at 1166. These cases may be distinguished from Bacon v. Bradley-Bourbonnais High School District No. 307, 707 F.Supp. 1005 (C.D. Ill. 1989) wherein the court held that an individual had a protectedFirst Amendment right to pass out Gideon Bibles on a school-owned sidewalk in front of a high school. The court held that the sidewalk was a public forum considering its unrestricted use by pedestrians, and held that the district's total ban on the distribution of literature on the sidewalk was not a reasonable time, place, or manner restriction. In partial support of its position, the district argued that to permit the distribution of Bibles on the sidewalk would violate the Establishment Clause, because permitting the activity would in effect be to further religious activity. The court characterized this argument as "patently absurd," and stated that a violation of the Establishment Clause would arise in Bacon only if the district were to allow the plaintiff but no one else to distribute religious materials.
In answer to your first question therefore, the distribution of religious materials on University property is constitutional, and the University may be constitutionally compelled to permit it, in certain circumstances. In my opinion, for example, if there are certain areas of the campus, including sidewalks, streets, or other areas (whether inside campus buildings or outdoor areas) on which the University has historically permitted the exercise of free speech rights, it may be compelled to allow the exercise of free speech rights thereon by religious groups seeking to distribute religious materials. In such circumstances the religious groups should be treated as any other individual or group seeking to exercise First Amendment free speech rights. See Widmar, supra. The University may make reasonable time, place, or manner restrictions. On the other hand, in my opinion a colorable Establishment Clause violation would occur if the University were to permit the dissemination of Bibles in classrooms, during instruction time, or under other circumstances which imply a government sponsorship or entanglement with the distribution. See Lee v. Weisman, 505 U.S. ___, 120 L.Ed.2d 467, 112 S.Ct. ___ (1992), and Lemon v. Kurtzman, 403 U.S. 602 (1971). Even though certain areas of state universities may be "public forums" and even though college students are less impressionable than the students in many of the cases involving the distribution of Bibles in public primary schools, the state is still proscribed from excessive entanglements with, or the promotion of, religion. As stated in Berger, supra:
 Defendant is also wrong as a matter of law that the First Amendment interest in free expression automatically trumps the First Amendment prohibition on state-sponsored religious activity. The reverse is true in the coercive context of public schools. Even in Widmar, where the Supreme Court found that the public university had violated the speech rights of religious organizations by denying them access to after-school classrooms, the Court scrutinized the policy under Lemon to make certain it did not violate the Establishment Clause. . . . The Court found that opening the university's facilities to religious organizations would have a secular purpose, would not entangle the state with religion, and would not have the primary effect of advancing religion. . . . Had these conditions been violated, the Court would have been compelled under Lemon to uphold the exclusion of religious groups from university facilities. . . . First Amendment jurisprudence is densely populated with cases that subordinate free speech rights to Establishment Clause concerns.
(Citations omitted.)
Berger, supra at 1168. See also Lambs Chapel v. Center Moriches Union Free School District, 508 U.S. ___, 113 S.Ct. 2141,124 L.Ed.2d 352 (1993).
In my opinion, therefore, the University may allow, and may be required to allow, the distribution of Gideon Bibles at certain locations on University property. It may not, however, authorize the distribution in such a way as to violate the Establishment Clause. The issue is one, therefore, which will turn almost exclusively upon the facts surrounding the distribution.
In response to your second question, the University may, with regard to either traditional public forums or government designated public forums, impose reasonable time, place and manner restrictions which are content-neutral, narrowly tailored to serve a significant governmental interest, and which leave open alternate channels of communication. See United States v. Grace, 461 U.S. 171 (1983) and Paulsen, supra.
If the location at issue is not a public forum, the state has the maximum control over the exercise of free speech rights. It is sufficient in these instances if rules and regulations reflect a legitimate government concern and do not suppress expression merely because public officials oppose the speaker's view. Id. at 69.
The answers to questions one and two above render an answer to your third question unnecessary.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] In rare instances, narrowly drawn content-based exclusions that are necessary to serve a compelling state interest are acceptable. See Paulsen, supra at 69, citing Frisby v. Schultz,487 U.S. 474 (1988).